[Civ. Nos. 13401, 13552. Third Dist. May 16, 1973.]

PARKING AUTHORITY OF THE CITY OF SACRAMENTO,
Plaintiff and Respondent, v.
GEORGE P. NICOVICH et al., Defendants and Appellants.

**COUNSEL**

James P. Jackson, City Attorney, G. Richard Brown, Deputy City Attorney, McDonough, Holland, Schwartz, Allen & Wahrhaftig, McDonough, Holland, Schwartz & Allen and Milton L. Schwartz for Plaintiff and Respondent.

Desmond, Miller & Desmond and Richard F. Desmond for Defendants and Appellants.

**OPINION**

**DAVID, J.**\*—Defendants appeal from the judgment entered July 8, 1971, awarding them $116,000 as compensation for their real property, condemned in fee for public parking purposes. Their complaint is that the award does not include "moving expenses," damages by reason of relocation of their business, alleged loss in value to an assertedly unique auto parts inventory, loss of customers and business goodwill and costs of advertising in relation to the move.

Under the applicable law and the circumstances, defendants' rights to compensation became fixed as of the date of trial. (Code Civ. Proc., § 1249; *City of Santa Maria* v. *Alco-Pacific Enterprises, Inc.* (1968) 266 Cal.App.2d 477, 481 [72 Cal.Rptr. 204].) The verdict of the jury was entered on May 27, 1971.

 Under the law then applicable, the court properly excluded proof in support of the so-called moving expenses and other consequential damage items. Neither California Constitution, article I, section 14, nor statutory or judicial authority recognized them as elements required to be compensated. We can neither revise the Constitution nor rewrite the numerous decisions of our courts to conform to defendants' importunities. (*People* v. *Ayon* (1960) 54 Cal.2d 217, 226 [5 Cal.Rptr. 151, 352 P.2d

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

519]; *People* v. *Ricciardi* (1943) 23 Cal.2d 390, 396 [144 P.2d 799]; *Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 260-261 [42 Cal.Rptr. 89, 398 P.2d 129]; *Oakland* v. *Pacific Coast Lumber etc. Co.* (1915) 171 Cal. 392, 398-399 [153 P. 705]; *City of Los Angeles* v. *Allen's Grocery Co.* (1968) 265 Cal.App.2d 274, 280-281 [71 Cal.Rptr. 88]; cf. *Rose* v. *State of California* (1942) 19 Cal.2d 713 [123 P.2d 505].) Damages were not allowed for losses occasioned by the time required to relocate and set up business again after a condemnation. (*City of Los Angeles* v. *Klinker* (1933) 219 Cal. 198, 212 [25 P.2d 826, 90 A.L.R. 148]; *City of La Mesa* v. *Tweed & Gambrell Mill* (1956) 146 Cal. App.2d 762, 776 [304 P.2d 803].)

Special affection for the property is excluded. (*Los Angeles Gas & Elec. Corp.* v. *Etienne* (1927) 83 Cal.App. 645 [257 P. 123].) An award for damages to business is not authorized, nor is an award for loss of earnings. (*City of Long Beach* v. *Wright* (1933) 134 Cal.App. 366, 379 [25 P.2d 541].)

Over the years, the movement to cut down the *damnum absque injuria* saddled upon the condemnee has gained momentum. As of July 1, 1972, the effective date of amended Government Code section 7262, the Legislature required that the "moving costs" and other items as specified therein, be paid by the condemning agency. These embrace at least some of the items for which defendants sought compensation, and upon which they sought unsuccessfully to present proof. ██ Defendants urge that, as amended, this statute should be applied retroactively, inasmuch as their appeal was pending when it became effective.

██ There is a general presumption that statutory changes do not apply retroactively, unless the Legislature expresses an intent that they do so. (*Wilke & Holzheiser, Inc.* v. *Dept. of Alcoholic Bev. Control* (1966) 65 Cal.2d 349, 371 [55 Cal.Rptr. 23, 420 P.2d 735].) ██. In this instance, the general intent is expressed to the contrary in Government Code sections 7270 and 7272.5, governing the division and chapter of the code in which section 7262 appears. Specifically, in amending section 7262, the Legislature provided that, notwithstanding the amendments and repeals effectuated by the act, public entities might, until July 1, 1972, continue to render financial assistance in accordance with their undertakings under section 7262 as it existed prior to the amendment. (Stats. 1971, ch. 1574, § 30.) This was unnecessary, if the amendment was retroactive. Where future, rather than past action is involved (as in the case of an injunction prospective in effect), a law passed during the pendency of an appeal has

been given effect. (*Tulare Dist.* v. *Lindsay-Strathmore Dist.* (1935) 3 Cal.2d 489, 527 [45 P.2d 972].) Likewise, a subsequent procedural statute preserving rather than defeating a remedy, has been held to apply to litigation on appeal. (*Manquero* v. *Turlock, etc. School Dist.* (1964) 227 Cal. App.2d 131 [38 Cal.Rptr. 470], allowing late presentation of a claim against the district.) We conclude that defendants are not entitled to the retroactive construction sought here. (*Helm* v. *Bollman* (1959) 176 Cal. App.2d 838 [1 Cal.Rptr. 723].)

■ Prior to July 1, 1972, Government Code section 7262 provided in pertinent part that, "As a part of the cost of acquisition of real property for a public use, a public entity *may* compensate a displaced person for his actual and reasonable expense in moving . . . ." (Italics added.) (Stats. 1969, ch. 1489, § 1.) In the 1971 amendment, the word "may" became "shall." It seems obvious that the traditional difference between discretionary "may" and mandatory "shall" was intended by the Legislature and must be given effect by us. (Gov. Code, § 14; Code Civ. Proc., §§ 1858, 1859.) There is no legal basis to conclude that "may" meant "shall" as applied to defendants' property at the date of taking.

■ Defendants make an additional claim, asserting that at the time of the taking of their property, the state Legislature required the payment of moving expenses, and other consequential damages in other designated property acquisitions. Hence, it is urged, equal protection of the laws demands that such detriments be compensated in all cases, including theirs.

In 1969, the Legislature enacted an expanded authorization for relocation assistance, adding sections 7260 through 7272 to the Government Code, section 600 to the Public Utilities Code, section 158.1 to the Streets and Highways Code and amending section 33415 of the Health and Safety Code, adopted with an urgency clause. The Streets and Highways Code amendment permitted the state department to make payments pursuant to the new section 7265 of the Government Code, in any case where federal funds were available for reimbursement. The other provisions were made applicable only to provision of relocation assistance to "any individual, family, business, or farm operation located in a county having a population of more than four million persons." (Gov. Code, § 7272.) In the 1969 version of Government Code section 7262, it was provided that a "public entity may compensate a displaced person" for moving expenses specified. The State Board of Control for the state, and the governing body of any other entity concerned, were authorized to adopt rules and regulations, to implement the relocation provisions (Gov.

Code, § 7268) and payments were required to be made in accordance with such rules and regulations.

By California Statutes (1971), chapter 1574, all of such special acts were repealed, and compensation is provided for in all cases to the extent provided by Government Code section 7262, amended, as we have noted, effective July 1, 1972.

It is true that California Constitution, article I, section 21, provides: "No special privileges or immunities shall ever be granted which may not be altered, revoked, or repealed by the Legislature; nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

Regarding this guarantee, the Supreme Court stated in *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 288-289 [32 Cal.Rptr. 830, 384 P.2d 158]: "Of course, the authority and duty to ascertain the facts which will justify class legislation lies with the Legislature and not with the courts (*In re Herrera,* 23 Cal.2d 206 [143 P.2d 345]) and the Legislature is vested with a wide discretion in adopting classifications to which any particular statute is made applicable (*Johnson* v. *Superior Court, supra,* 50 Cal.2d 693 [329 P.2d 5]; *State of California* v. *Industrial Acc. Com.,* 48 Cal.2d 365 [310 P.2d 7]), and every presumption is in favor of its validity [citations]."

The permissive authority granted simply vested in the named public entities the power to make expenditures for the purposes specified. It was no different from any other grant of power to local governments. ■ It has long been held that the grant of powers to such agencies creates no rights in the citizenry to demand their exercise.

■ "When a legislative classification is questioned, if any state of facts reasonably can be conceived that would sustain it, there is a presumption of existence of that state of facts, and the burden of showing arbitrary action rests upon the one who assails the classification." (*People* v. *Western Fruit Growers* (1943) 22 Cal.2d 494, 507 [140 P.2d 13].)

If, as defendants contend, section 7262, before the amendment effective July 1, 1972, was void, as permitting selective largesse and hence unequal protection of the laws, they cannot claim that of right they are entitled to share in the benefits of the invalidity. The statute would be void for all purposes. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212].)

█ Even where constitutional relationships are concerned, the Legislature has the power to classify persons and things. The problems of dealing justly with displaced persons and their property, resulting from public improvements, may have had to be attacked piecemeal, as apparently the California Legislature did. This cannot be invalidated. (*Dandridge* v. *Williams* (1970) 397 U.S. 471, 486-487 [25 L.Ed.2d 491, 502-503, 90 S.Ct. 1153].)

Since Government Code section 7262, permitting award of moving expenses, prior to July 1, 1972, was limited to counties of the first class (Los Angeles County), defendants have no standing to claim such an award in the first place, and of course no governmental entity has exercised a discretion to make them such allowances. We are persuaded that the legislative classification was valid. (*Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 831, 833 [48 Cal.Rptr. 481, 409 P.2d 481].)

It is a matter of common knowledge, and hence of judicial notice, that highway construction (such as the Hollywood Freeway), and redevelopment (such as that on Bunker Hill, Los Angeles) resulted in the displacement of thousands of persons from dwellings and business establishments, both tenants and landowners. Eminent domain awards, depleted by costs of moving and relocation, were insufficient to supply those displaced with equivalents of the properties from which they had been displaced. Often, this was entirely unavailable. A natural disaster, perhaps, could not have created more personal havoc. Construed together, the provisions of Government Code sections 7260 through 7264 obviously are concerned with this "disaster relief" rather than eminent domain, for section 7272.5 is clear that no new elements of damage in eminent domain are created thereby.

Quoting *Miller* v. *Wilson* (1914) 236 U.S. 373, 382-384 [59 L.Ed. 628, 631-632, 35 S.Ct. 342], affirming *Matter of Application of Miller* (1912) 162 Cal. 687 [124 P. 427], the United States Supreme Court has held: "The legislature is not debarred from classifying according to general considerations and with regard to prevailing conditions; otherwise, there could be no legislative power to classify. . . . [T]he legislature is not bound, in order to support the constitutional validity of its regulation, to extend it to all cases which it might possibly reach. Dealing with practical exigencies, the legislature may be guided by experience. [Citations.] It is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be the clearest." As it is with classification for regulation, we deem the power no less extensive in dealing with civil problems arising from the displacement of persons.

Timewise, the defendants lie just beyond the effective date of Government Code section 7262 in its present form; but they are no differently situated from others who are found on the borderline of rights, remedies and restrictions. (Cf. *Ferrante* v. *Fish & Game Commission* (1946) 29 Cal.2d 365, 374 [175 P.2d 222].)

In life, and in law, there are many situations where advantages are received or withheld, and where persons do not qualify for them by narrow margins of time or circumstance. But in this instance, sympathy cannot expand the rights precisely created by the code.

█ It has been argued that the Legislature, in providing for relocation costs occasioned by the exercise of eminent domain, has thus made its own interpretation of the Constitution, article I, section 14, and under this expanded dimension of what constitutes "damaging for public use," defendants were constitutionally entitled to recover such elements of their detriment. The cases do not support such a conclusion, nor does the statute permit it.

The Legislature made this abundantly clear. In Government Code section 7270, it is provided: "Nothing contained in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain any element of damages not in existence on the date of enactment of this chapter." (Stats. 1969, ch. 1489, § 1, urgency effective Sept. 6, 1969.)

Government Code section 7272.5 provides: "Nothing contained in this article shall be construed as creating in any condemnation proceeding brought under the power of eminent domain, any element of damages not in existence on the date the public entity commences to make payments under the provisions of this article as amended by the act which enacted this section at the 1971 Regular Session of the Legislature." (Stats. 1971, ch. 1574, § 21.)

Government Code sections 7267 through 7267.7 provide for the procedure and adoption of regulations to effectuate the relocation awards. Government Code section 7274 provides: "Sections 7267 to 7267.7, inclusive, create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation."

This suggests another reason why the mandatory provisions of 7262 should not be applied retroactively. To do so would be to the detriment of any landowners who sold their lands to the Parking Authority before the effective date of the mandatory requirement.

It is an error to assume that Government Code section 7262 at the date damages were fixed granted relocation costs, which were subject to arbitrary nullification if the public agency chose not to afford them. There simply was no right to such costs in the first place.

In respect to the matters under consideration—removal costs—the statutory development is to be observed in juxtaposition to the pertinent court decisions. In 1965, in *Town of Los Gatos* v. *Sund*, 234 Cal.App.2d 24 [44 Cal.Rptr. 181], the court considered the condemnee's claim for moving costs. There, as in the instant case, it was pointed out that the Legislature had expanded the elements of damage to be recovered in eminent domain as to some items.

Nevertheless, it was held that there was no constitutional right to recover such costs, under either the state or federal Constitutions. Referring to *Oakland* v. *Pacific Coast Lumber etc. Co., supra,* 171 Cal. 392, the court stated (p. 27): "The decision related to damages for loss of business, and not to moving costs, but the principle is the same, namely, that the Constitution simply requires payment for taking or damaging property. The compensation is 'for the property, and not to the owner.' (*Monongahela Navigation Co.* v. *United States,* 148 U.S. 312 [13 S.Ct. 622, 37 L.Ed. 463]; *Pacific Gas & Elec. Co.* v. *Chubb,* 24 Cal.App. 265, 267 [141 P. 36].)"

Concluding the opinion in *Town of Los Gatos* v. *Sund, supra,* 234 Cal.App.2d at page 28, the court declared: "[W]e believe that in view of the cases cited above, this argument is one to be addressed to the Legislature. We have taken note of appellants' plea that incidental losses affect an ever-increasing multitude of people as eminent domain is more widely used (see *Eminent Domain Valuations in An Age of Redevelopment: Incidental Losses,* 67 Yale L.J. 61, 63-64) but it is not for us to change the established law."

In *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 51, footnote 4 [104 Cal.Rptr. 1, 500 P.2d 1345], the Supreme Court stated in part: "However, the Legislature may by statute include in the final award certain costs and expenses not required by the Constitution. (Cf. *County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141, 144-145 [98 Cal.Rptr. 454, 490 P.2d 1142]; compare *Central Pacific R. Co.* v. *Pearson* (1868) 35 Cal. 247, 263, overruled on other grounds in *County of Los Angeles* v. *Faus,* 48 Cal.2d 672, 680 [312 P.2d 680]; *Town of Los Gatos* v. *Sund* (1965) 234 Cal.App.2d 24, 28 [44 Cal.Rptr. 181], with Gov. Code, § 7262 [moving expenses]; and *County of Los Angeles* v. *Ortiz, supra,* 6 Cal.3d 141, 143

fn. 2, 148-149 with Code Civ. Proc., § 1246.3 [attorneys' fees and appraisal costs].)" In the same decision (p. 54, fn. 7), the California Supreme Court stated, in part: "In California, moving expenses are excluded from the constitutional requirement of just compensation (*Central Pacific R. Co.* v. *Pearson, supra,* 35 Cal. 247, 263; *Town of Los Gatos* v. *Sund, supra,* 234 Cal.App.2d 24, 28) but are compensable under some circumstances by statute (Gov. Code, § 7262). Similarly, recovery for expert witness and attorneys' fees is not compelled constitutionally (*County of Los Angeles* v. *Oritz, supra,* 6 Cal.3d 141, 143 fn. 2, 148-149) but is authorized in some limited instances by statute (Code Civ. Proc., § 1246.3)."

There is no warrant, in view of such statements, to conclude that the Legislature, in enacting statutes allowing additional recovery for detriments associated with the eminent domain proceeding, expanded the constitutional requirements of article I, section 14. The additional recoveries which the Legislature has authorized could therefore be modified or even abolished at any time without impairment of the constitutional provision.

 The damages contemplated by article I, section 14, relate to property "damaged for public use." (Cf. *Miller* v. *City of Palo Alto* (1929) 208 Cal. 74, 77 [280 P. 108].) A damage for public use includes the detriments which impair other land by the intended or proximate consequences of the principal taking or improvement. (*Bauer* v. *County of Ventura* (1955) 45 Cal.2d 276, 284-285 [289 P.2d 1].) While personal property in theory is subject to eminent domain, the California Constitution and Code of Civil Procedure section 1240, subdivision 1, relate to real property and real property interests, in practice. (Cf. *Heimann* v. *City of Los Angeles* (1947) 30 Cal.2d 746, 756 [185 P.2d 597].)

· The Legislature, having the power to provide for payment of additional items of claimed detriment, did so in various instances. If in the exercise of the right of eminent domain, the tracks of any railroad, street or interurban railway are required to be removed, it is provided by Code of Civil Procedure section 1248a (enacted 1911, amended 1913): ". . . The compensation to be paid for such relocation or removal of tracks · shall be ascertained and assessed in the action, as in other cases, and separately from other sources of damage." The dislocation of one public use by another is involved, in which there is a special public interest in providing for the relocation, charging that cost up to the public requiring the removal, rather than casting it upon the public using the railway, through the rates which would take account of the removal expense.

Code of Civil Procedure section 1248b was enacted in 1957, after the decision in *City of Los Angeles* v. *Klinker, supra,* 219 Cal. 198. The code enunciates the principles established in that case: that fixtures are a part of the realty for purposes of compensation, as part of a "unit for use," when in the language of the code section the equipment is designed "for manufacturing or industrial purposes and installed for use in a fixed location . . . regardless of the method of installation." The existence of such legislative provisions, each supported by valid criteria for classification, does not aid defendants.

■ Separately (consolidated with No. 13401) defendants appeal from disallowance of items claimed as costs, by their supplemental memorandum of costs.

The judgment as noted above was entered on July 8, 1971. Defendants desired to remain on the property. A stipulation was made that they would deliver possession of the property on or before December 1, 1971, and would pay rent to plaintiff until possession was surrendered; defendants were permitted to withdraw the sum awarded them by the judgment, without prejudice to their appeal. Subsequently, defendants sought to be relieved from the stipulation and sought an order allowing them to remain in possession for additional time, since plaintiff refused to extend the time by stipulation; plaintiff obtained an order to show cause why defendants should not be held in contempt for failure to surrender the premises. A series of hearings followed, during which defendants' gradual removal from the premises was noted. On February 1, 1972, defendants apparently having completed their move, they withdrew their motion to remain in possession and plaintiff Parking Authority withdrew the order to show cause re contempt.

Defendants' supplemental cost bill included attorney's fees and expenses for witnesses who testified during their legal skirmishes, in which they sought to prolong their stay and to avoid being held in contempt. The trial court properly disallowed such items as costs. (1) They were not made necessary to secure just compensation for the taking accomplished by eminent domain. (2) The matter having been determined by mutual dismissals, defendants were not prevailing parties, entitled as such to costs. (3) If the award of costs was discretionary, the trial judge determined their claim adversely. (4) The arrangement to remain upon the premises, paying rent, was a contractual arrangement, not at all a part of the eminent domain procedure. (5) Attorney's fees are not allowable in these holdover proceedings. (Cf. *County of Los Angeles* v. *Ortiz* (1971) 6 Cal.3d 141 [98 Cal.Rptr. 454, 490 P.2d 1142]; *Klopping* v. *City of Whittier,*

*supra,* 8 Cal.3d 39.) No basis is established for application of Code of Civil Procedure section 1246.3.

The order taxing and disallowing costs to defendants on their supplemental memorandum of costs is affirmed.

The judgment is affirmed.

Janes, J., concurred.

**FRIEDMAN, Acting P. J.**—I dissent from that portion of the majority opinion which denies the landowners' claim for consequential damages described in Government Code section 7262. This court's heavy workload militates against the luxury of a lengthy, citation-studded dissent. I do no more than sketch the bare bones of disagreement.

The decision of this appeal involves more that an isolated case of a retail establishment's moving expenses. It involves the scope and application of the entire range of relocation expenses provided by the Government Code chapter entitled "Relocation Assistance."

Article I, section 14, of the California Constitution declares that private property shall not be taken or damaged for use without just compensation to the owner. During most of the state's history the Legislature indulged in little interpretation of the phrase "just compensation," but left its interpretation to the judicial branch. The latter, by a process of inclusion and exclusion, established a body of case law defining the elements of just compensation. Generally, the California Supreme Court interpreted article I, section 14, to include loss of property values but not the landowner's consequential damages. (See *People* v. *Symons,* 54 Cal.2d 855, 859-862 [9 Cal.Rptr. 363, 357 P.2d 451]; *People* v. *Ricciardi,* 23 Cal.2d 390, 401-402 [144 P.2d 799]; *Bacich* v. *Board of Control,* 23 Cal.2d 343, 349-356 [144 P.2d 818].) Consequential damages were denied even though as tangible and determinable as the property values congealed out of the airy opinions of real estate appraisers.

Over the years the Legislature supplied statutory authority for paying the condemnation-caused relocation expenses of a few selected commercial enterprises. (See, e.g., Code Civ. Proc., §§ 1248a, 1248b.) In 1969 the Legislature adopted a new law authorizing "relocation assistance." (Stats. 1969, ch. 1489.) The 1969 law confined relocation assistance to counties

of 4,000,000 or more population, that is, Los Angeles County. (Gov. Code, § 7260.) The new enactment included Government Code section 7262, declaring that a government agency "may" pay family or business moving expenses. It also authorized other kinds of relocation costs for homeowners dispossessed by condemnation (Gov. Code, §§ 7263-7264) and for property owners damaged by contiguous projects (Gov. Code, § 7265).

On April 6, 1970, the present condemnation suit was filed. In that same year the Legislature amended the relocation law to eliminate the restriction to Los Angeles County. (Stats. 1970, ch. 983.) The 1970 amendment became effective November 23, 1970. The 1970 law did not amend Government Code section 7262, leaving intact its provision for permissive, that is, arbitrary, payment or withholding of moving expenses.

In May 1971 this case went to trial; the trial date became the "valuation date" for fixing the defendants' compensation in damages. (Code Civ. Proc., § 1249.) Judgment was entered in July 1971 and notice of appeal was filed the following month. The 1971 Legislature amended Government Code sections 7262-7265 to substitute "shall" for "may" as the operative term for payment of the various kinds of consequential damage described in those sections. (Stats. 1971, ch. 1574.) The 1971 amendments became effective on March 4, 1972, while this case was pending on appeal. The 1971 amendments are not retroactive and have no application to this lawsuit. My concern here is with Government Code section 7262 in its pre-1971 form.

Were it so minded, the Legislature might by statute interpret article I, section 14, to embrace formerly excluded damages within the constitutional concept of "just compensation." The decisions, on the other hand, have it that the allowance of relocation costs is extra-constitutional and wholly statutory. (See *Klopping* v. *City of Whittier,* 8 Cal.3d 39, 51 (fn. 4), 54 (fn. 7) [104 Cal.Rptr. 1, 500 P.2d 1345]; *Town of Los Gatos* v. *Sund,* 234 Cal.App.2d 24, 27-28 [44 Cal.Rptr. 181].) Whether the allowance is constitutional or statutory has little significance here. In my belief the Legislature has here violated two fundamental constitutional guarantees, both expressing the equality of all citizens before the law and both prohibiting discrimination under color of law.

Section 11 of article I of the California Constitution declares that all laws of a general nature shall have a uniform operation. Section 21 of the same article prohibits the Legislature from extending privileges and immunities to less than all citizens. In its 1970 version, Government Code

section 7262 would grant relocation expenses to some condemnees and withhold them from others for no reason but the arbitrary choices of officialdom.[1]

Constitutional guarantees of equality and uniformity do not prevent statutory classifications reasonably related to a legitimate public purpose. (*Hayes* v. *Superior Court,* 6 Cal.3d 216, 223 [98 Cal.Rptr. 449, 490 P.2d 1137].) There is no intrinsic difference between a municipal utility district, for example, and a public parking district warranting diversity in the grant or denial of relocation expenses. There are no intrinsic differences among condemnees justifying discrimination by the litmus of the condemner's benevolence or parsimony.

If, conceivably, fertile imagination can conjure up a rational basis for these discriminations, the Legislature has not troubled to describe it. Not a word, not an implication, in any of these statutes explains why the Legislature gave condemning agencies a blank check to discriminate among landowners. In all deference, I suggest that the majority opinion stretches judicial notice past the breaking point in finding stressful conditions in Los Angeles County meriting special financial benefits for landowners in that county. A court cannot create "constitutional facts" in that manner. (*U. S.* v. *Carolene Products Co.,* 304 U.S. 144, 153-154 [82 L.Ed. 1234, 1242-1243, 58 S.Ct. 778]; 16 C.J.S., Constitutional Law, § 97, p. 356.) I prefer to take "judicial notice" that a condemnee in San Joaquin or Del Norte County is no less damaged by a highway condemnation than a Los Angeles landowner; that a condemnee displaced by a public parking facility is no different from one displaced by a state highway.

As the majority opinion points out, the 1971 Legislature expressed its intention against retroactivity of the 1971 law's mandatory provisions. We should be less concerned with the Legislature's intent than that it obey the Constitution. The question is not one of retroactivity at all, for the 1971 amendment to Government Code section 7262 was prospective only. The problem, rather, revolves around the statute's 1970 version, for that was the law in effect on the valuation date in this lawsuit.

[1]Although not directly involved here, the 1969 law's limitation to Los Angeles County is a particular affront to constitutional demands for the equality of all California citizens before the law. If there was a rational basis for restricting relocation assistance to Los Angeles condemnees, the Legislature did not trouble to explain it. The shifts in legislative power created by the "one man, one vote" principle tend to funnel public benefits into areas most heavily represented in the Legislature. Now, more than ever, the courts must be vigilant to enforce constitutional guarantees of equality for all citizens. Territorial discriminations may be just as invidious as class discriminations.

Contrary to the majority, collision with constitutional demands for equality and uniformity does not necessarily nullify the 1970 law. In the light of the purposes and history of a statute, a reviewing court may correct a discriminatory classification by invalidating the invidious exemptions and thus extending statutory benefits to those whom the Legislature unconstitutionally excluded. (*Hayes* v. *Superior Court, supra,* 6 Cal.3d at p. 224, and cases cited.) The relocation statutes are part of the Government Code. Section 23 of that code is a declaration of severability, calling for the salvage of any section of that code when, in application to particular persons or circumstances, it is found to be invalid. Section 23 manifests the Legislature's desire that the relocation provisions of the Government Code apply to the full extent permitted by the Constitution. (*Franklin Life Ins. Co.* v. *State Board of Equalization,* 63 Cal.2d 222, 228 [45 Cal.Rptr. 869, 404 P.2d 477].)

Moreover, the word "may" in Government Code section 7262 is not inevitably permissive. Every statute must be construed in the light of constitutional restrictions on the legislative power. (*County of Los Angeles* v. *Riley,* 6 Cal.2d 625, 628 [59 P.2d 139, 106 A.L.R. 903].) The word "may" is not always permissive. " 'The conclusion to be adduced from the authorities is, that where power is given to public officers, in the language of the act before us, or in equivalent language—whenever the public interest or individual rights call for its exercise—the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless.' " (*Supervisors, Rock Island Co.* v. *United States,* 71 U.S. (4 Wall.) 435, 447 [18 L.Ed. 419, 423], quoted in *Hayes* v. *County of Los Angeles,* 99 Cal. 74, 80 [33 P. 766]; see also, *Uhl* v. *Badaracco,* 199 Cal. 270, 282 [248 P. 917]; *Hofacker* v. *Board of Supervisors,* 264 Cal.App.2d 290, 292-293 [70 Cal.Rptr. 374].)

Construed to avoid unconstitutionality, the relocation expense provisions of the Government Code, as amended in 1970, must be applied as a governing rule of damages in condemnation trials characterized by a valuation date following the effective date of the 1970 amendments, November 23, 1970. The trial court therefore erred in denying defendants the opportunity to adduce evidence of their moving expenses.

A petition for a rehearing was denied June 4, 1973, and appellants' petition for a hearing by the Supreme Court was denied July 12, 1973. Mosk, J., was of the opinion that the petition should be granted.