[Civ. No. 55451. Second Dist., Div. Four. Nov. 30, 1979.]

CARSON REDEVELOPMENT AGENCY,
Plaintiff and Appellant, v.
HARRIET WOLF, Defendant and Respondent;
EDWARD B. WOLF, INC., Defendant and Appellant.

240

COUNSEL

Richards, Watson, Dreyfuss & Gershon and Arnold Simon for Plaintiff and Appellant.

O'Neill & Huxtable and Richard L. Huxtable for Defendant and Appellant and for Defendant and Respondent.

OPINION

**JEFFERSON (Bernard), J.**—Plaintiff Carson Redevelopment Agency commenced eminent domain proceedings against defendants Edward B. Wolf, Inc., a corporation, and Harriet Wolf, among others. The subject property was owned by Harriet Wolf and leased to Edward B. Wolf, Inc. An interlocutory judgment was entered pursuant to the stipulation of the parties, awarding $265,000 as reasonable compensation for the land taken; the judgment further provided that defendant Edward B. Wolf, Inc. was reserving the right to appeal from that portion of the judgment denying to that defendant compensation for loss of business good will. Said defendant has appealed from that portion of the judgment. An appeal has been taken by plaintiff agency from a portion of a certain order made in the trial court during this litigation awarding defendant Harriet Wolf $500 in attorney fees. The two appeals have been consolidated here for review.

I

*The Edward B. Wolf, Inc. Appeal*

Defendant corporation has appealed from an "interlocutory" judgment. Ordinarily, no appeal lies from such a judgment, because it would violate the "one-judgment" rule, which compels review of *final* judgments only, thereby avoiding piecemeal disposition of a case. Certain interlocutory judgments are made appealable by statute (Code Civ. Proc., § 904.1) as express exceptions to the general rule, but an interlocutory judgment in condemnation is not included. (Cf. *South Bay Irr. Dist. v. California-American Water Co.* (1976) 61 Cal.App.3d 944, 956 [133 Cal.Rptr. 166].)

However, we have examined the superior court file in this matter, and have determined that a final judgment was filed below in the instant case in July 1977. Therefore, we shall treat this appeal as premature, a defect curable by viewing it as an appeal from the final judgment. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 63, pp. 4077-4078.)

The sole issue presented by defendant corporation's appeal is whether the trial court acted properly in striking its claim for loss of business good will as part of the compensation due in the eminent domain proceeding.

Article I, section 19 of the California Constitution provides that "[p]rivate property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation."

Prior to 1976, it was settled California law that loss of business good will occasioned by the taking of property by eminent domain was not a taking which required the just compensation envisioned by the California Constitution. The California Supreme Court reaffirmed that principle in *Community Redevelopment Agency v. Abrams* (1975) 15 Cal.3d 813 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174], but invited the Legislature to reconsider the matter. The *Abrams* court observed: "We have concluded that valid reasons of policy, based primarily upon considerations of institutional competence, counsel in favor of judicial deference to the legislative branch in fashioning standards and procedures responsive to present realities in this area." (*Id.* at p. 828.)

In 1975, the Legislature enacted the new Eminent Domain Law (ch. 1275, § 2, p. 3410), commencing with section 1230.010 of the Code of Civil Procedure. For the first time, it was provided that, under certain specified circumstances, "just compensation" for the taking of private property could include compensation for loss of business good will. (See Code Civ. Proc., § 1263.510.) The new Eminent Domain Law, itself, was to become operative July 1, 1976; the Law Revision Commission comment explained that it was felt that a six-month delay was necessary to enable affected persons to become familiar with the new law. The Legislature also provided that "[t]his title *does not apply* to an eminent domain proceeding commenced prior to January 1, 1976." (Code Civ. Proc., § 1230.065.) (Italics added.)

In 1975, defendant corporation was operating a full scale facility for liquid-feed tank trucks and trailers. Plaintiff agency filed the complaint

in eminent domain on December 31, 1975, a day before the new law would be applicable to such proceedings. Defendant could find no satisfactory alternative location for its business; it leased the subject premises from defendant Harriet Wolf. It was thus forced to terminate operations, and sell the component parts of the business property. The trial court denied defendant's claim for loss of business good will on the ground that the law applicable to the claim, as it existed on December 31, 1975, precluded this type of compensation.

Defendant corporation challenges that ruling here as a violation of its constitutionally protected right to equal protection of the laws. Defendant corporation specifically contends that it was unconstitutional for the Legislature, by selecting a date certain for application of the new law, to preclude certain unfortunate citizens, against whose property eminent domain proceedings commenced *before* January 1, 1976, from receiving compensation for loss of business good will, while others would be so compensated when the action was commenced *after* January 1, 1976. The legislative selection of the operative date, defendant argues, resulted in an unreasonable classification which cannot be justified.

Article I, section 7 of the California Constitution provides that "(a) A person may not be. . .denied equal protection of the laws." A similar prohibition is contained in the Fourteenth Amendment to the United States Constitution. It was explained in *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241], that "the United States Supreme Court has employed a two-level test for measuring legislative classifications against the equal protection clause. 'In the area of economic regulation, the high court has exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. [Citations.] [¶] On the other hand, in cases involving "suspect classifications" or touching on "fundamental interests," [fns. omitted] the court has adopted an attitude of active and critical analysis, subjecting the classification to strict scrutiny. [Citations.] Under the strict standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' [Citations.]" (Italics in original.)

Defendant urges us to characterize the receipt of just compensation for the taking of private property as a "fundamental" interest of the condemnee, thus invoking the strict scrutiny standard described in *Serrano, supra,* when assessing the reasonableness of Code of Civil Procedure section 1230.065. Defendant assumes that the situation presented in the case at bench primarily involves a "taking" of property; however, in view of the fact that, in 1975, *Abrams* held that failure to compensate for loss of business good will was *not* a constitutionally protected "taking," defendant's assumption fails. What we have here is a legislative act which provides an additional benefit to certain condemnees, one which the Legislature was *not* constitutionally required to give.

In this context, the case at bench is not unlike that of *Parking Authority* v. *Nicovich* (1973) 32 Cal.App.3d 420 [108 Cal.Rptr. 137], in which the condemnee challenged a regulation conferring the right to compensation for moving expenses—after a certain specified date. Defendant asserted denial of equal protection of the laws when moving expenses were not provided to him due to the time frame of the proceedings in which he was involved.

The *Nicovich* court declined to apply the "strict scrutiny" standard to the situation there presented, but rather viewed the classification—of those receiving moving expense reimbursement and those not receiving such reimbursement—as one affecting an economic interest. As such, all that was required was that the classification bear some reasonable relationship to a legitimate governmental interest. The *Nicovich* court stated: "Timewise, the defendants lie just beyond the effective date of Government Code section 7262 in its present form; but they are no differently situated from others who are found on the borderline of rights, remedies and restrictions. [Citation.] [¶] In life, and in law, there are many situations where advantages are received or withheld, and where persons do not qualify for them by narrow margins of time or circumstance. But in this instance, sympathy cannot expand the rights precisely created by the code." (*Nicovich, supra,* 32 Cal.App.3d 420, 428.)

We have found no persuasive authority which suggests that the statute in question here touches upon a "fundamental" right; rather, it falls within the area of economic regulation. (See, e.g., *Dandridge* v. *Williams* (1970) 397 U.S. 471, 486-487 [25 L.Ed.2d 491, 502-503, 90

S.Ct. 1153]; *Village of Belle Terre* v. *Boraas* (1974) 416 U.S. 1 [39 L.Ed.2d 797, 945. Ct. 1536].)

Defendant corporation places heavy reliance upon *Lynch* v. *Household Finance Corp.* (1972) 405 U.S. 538 [31 L.Ed.2d 424, 92 S.Ct. 1113]. But *Lynch* cannot be interpreted as a holding that the good will of a business, as a species of property, constitutes a "fundamental" interest for purposes of deciding the constitutionality of a statute that is atttacked as violating a party's right to equal protection of the laws.

The test to be applied, therefore, in the case before us, is whether Code of Civil Procedure section 1230.065 conceivably has a reasonable relationship to an appropriate governmental objective. We have no difficulty in finding such a relationship. It is clearly a desirable and, indeed, a necessary function of the Legislature to expand and change the law to meet modern conditions of urban living when the Legislature deems it advisable. The addition to "just compensation" of the loss of business good will is a prime example of a beneficial change of existing law. If an enactment changes existing law, there is always potentially a "classification" between those who may benefit from the new law and those who may not. We cannot say that it is not within the power of the Legislature, in the field of economic regulation, to specify a date certain, a particular time when a new enactment will take effect. As a practical matter, it is far more orderly to specify a definite time rather than invite ambiguity. The rational relationship between the statute and the governmental objective concerns orderly transition and may be constitutionally justified for that reason. Defendant's attack on the constitutionality of Code of Civil Procedure section 1230.065 must, therefore, fail.

Defendant corporation also claims that plaintiff agency behaved coercively by offering to compensate for loss of business good will, even to those condemnees against whom action had been commenced prior to January 1, 1976, if the condemnees involved would be content with settlement outside the courtroom rather than judgment after trial. In support of this claim, defendant calls our attention to a copy of an interoffice memorandum of plaintiff which refers to such a policy, contained in the clerk's transcript.

Government Code section 7267.5 prohibits condemners from engaging in coercive practices to compel agreement on price in eminent domain proceedings, but does not describe the tactic attributed to plain-

tiff as "coercive"; in addition, no penalty is provided for a violation of the section.

We cannot determine from the record before us whether some persons similarly situated to defendant did receive compensation for loss of business good will by agreeing to settle rather than litigate, due to any settled policy of plaintiff agency. In the absence of more concrete evidence of an actual policy of discrimination, actively carried out by a condemning agency, we cannot deal with the issue in any definitive way.

## II

### The Agency Appeal

■ Plaintiff appeals from a portion of a certain order of the trial court made pursuant to former Code of Civil Procedure section 1242.5, subdivision (e), awarding defendant Harriet Wolf $500 in attorney fees after considering plaintiff's motion to compel inspection of the condemned property.

It appears that there was a mass, unannounced inspection of the subject property attempted by plaintiff on October 6, 1976, in violation of former Code of Civil Procedure section 1242.5, subdivision (a), which provided that inspections which would lead to the imposition of liability pursuant to Government Code section 816 must be made with the consent of the owner or by court order. Government Code section 816 spoke in terms of imposing liability upon the government when an owner sustained "actual damage to property" or, where there was "substantial interference" with the possession or use of property. Code of Civil Procedure section 1242.5 and Government Code section 816 have, in the new law, been codified in much the same language commencing with Code of Civil Procedure section 1245.020 et seq.

After this unannounced and unauthorized inspection attempt, at which approximately eight inspectors appeared at a time when defendant corporation was engaged in its business on the condemned premises, counsel for plaintiff sought consent for an inspection from counsel for defendants. Counsel for plaintiff was informed that, in view of the events of October 6, 1976, plaintiff agency would have to obtain a court order. Such an order was sought and, prior to the hearing, the court received various declarations concerning the attempted mass inspection. The court made what amounted to a protective order,

specifying the procedure to be followed in making any future inspection of the condemned property, and awarding the $500 fees to the defendants for the court appearance.

As it read at the time, Code of Civil Procedure section 1242.5, subdivision (e), provided that "[*t*]*he owner* is entitled to recover from the person who entered his property the amount necessary to compensate the owner for any damage which arises out of the entry and for his court costs, and reasonable attorney's fees to be fixed by the court, in the proceeding under this section. . . ." (Italics added.)

Plaintiff argues that what occurred on October 6, 1976, was not sufficiently serious to invoke the protection offered to condemnees by the former sections of the Code of Civil Procedure set forth above. Plaintiff disputes that there was any actual damage to defendant's premises or "substantial interference" with the possession or use of the subject property. While recognizing that the award of fees is relatively minor in amount, plaintiff professes to see the setting of a dangerous precedent by the award of fees in this case. We are asked to reassess the evidence presented to the trial court concerning the entry of October 6, 1976; we are asked to declare that the award of fees was "prejudicial error" because of the trial court's asserted failure to disregard certain hearsay statements contained in declarations before the court.

Our review of the record reveals that it was uncontroverted that approximately eight inspectors descended upon the subject premises during business hours, without prior announcement and without the owner's consent. The owner had allowed individual inspectors on the premises on many prior occasions. Defendants claimed that this particular inspection was made for the purpose of uncovering violations of certain local codes, in an effort to reduce the amount of compensation to be paid. There is no doubt that this particular condemnation was conducted with considerable aggressiveness and some resultant bitterness.

The trial court's task was to defuse the situation and provide for the inspection allowed by law while protecting the defendant corporation, still operating business on the premises. The order made by the trial court did just that. Implicit in the order was a finding that one "substantial interference" had already occurred, and that the order was designed to prevent any further "substantial interference." We conclude that the trial court was well within both the letter and the spirit of for-

mer Code of Civil Procedure section 1242.5, subdivision (e), when it awarded defendant $500 in attorney fees. The award was made "in the proceeding under this section" (Code Civ. Proc., § 1242.5, subd. (e))—the agency's petition for an order of inspection and defendant corporation's objection to such petition. No dangerous precedent need emerge; had plaintiff not undertaken the type of unannounced inspection that it did, no award of attorney fees would have been necessary. We need not, and do not, decide whether the result we reach under former Code of Civil Procedure section 1242.5, subdivision (b), would be reached under the present law set forth in Code of Civil. Procedure section 1245.060.

The judgment from which defendant Edward B. Wolf, Inc. has appealed is affirmed. Each party is to bear its own costs with respect to such appeal.

The order from which plaintiff has appealed is affirmed.

Files, P. J., and Swearinger, J.,* concurred.

A petition for a rehearing was denied December 28, 1979, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied January 24, 1980.

---

*Assigned by the Chairperson of the Judicial Council.