[Civ. No. 26710. Fourth Dist., Div. One. Mar. 19, 1984.]

COUNTY OF SAN DIEGO, Plaintiff and Appellant, v.
L. E. MORRISON et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

[1]Certified for publication with the exception of sections II through IV.

COUNSEL

Joseph Kase, Jr., Acting County Counsel, Lloyd M. Harmon, Jr., County Counsel, Howard P. Brody, Chief Deputy County Counsel, and Sandra J. Brower, Deputy County Counsel, for Plaintiff and Appellant.

Goebel & Monaghan, Louis E. Goebel and James E. Rubnitz for Defendants and Appellants.

OPINION

**WIENER, Acting P. J.**—This appeal arises from a longstanding eminent domain proceeding initiated by the County of San Diego (County) in 1973 to acquire 69.17 acres from L. E. and Jean Morrison (Morrisons) for the development of Sweetwater Regional Park.

The case first went to trial in 1974 to resolve the principal issue of the property's fair market value. The County appealed the judgment rendered in that trial on grounds not at issue here and this court reversed. The judgment entered in December 1981 after retrial included $56,250 as compensation for loss of business goodwill. The County appeals this portion of the judgment, contending the applicable law does not provide compensation for loss of business goodwill.

The Morrisons' cross-appeal focuses on three areas. The judgment was based on the fair market value of the property on February 16, 1973, the date the original complaint and summons were filed. The judgment also included an award of interest at the legal rate of 7 percent per annum on two figures: $356,000 (the difference between the amount the County had deposited as probable compensation ($519,000) and the amount found by the jury to be the fair market value ($875,000)) and $56,250 (the loss of business goodwill). The Morrisons challenge the selected valuation date, arguing it should be May 9, 1980, the date the County deposited probable compensation, rather than February 16, 1973. They also challenge the award of 7 percent interest, contending the rate is too low to justly compensate them and should be based on the prevailing market rate of interest. Finally, the Morrisons appeal the court's denial of their motion to recover litigation expenses.

Because we decide the law governing this action does not provide compensation for loss of business goodwill, we modify the judgment to exclude that award and accompanying interest. We also hold the court properly

selected February 16, 1973, as the valuation date and correctly denied the Morrisons' motion to recover litigation expenses. As to those issues, we affirm the judgment as modified. However, we reverse the award of 7 percent interest on the $356,000 unpaid value of the Morrisons' property and remand the matter for a determination of the applicable market rate of interest.

*Factual and Procedural Background*

Many of the problems in this case result from the long span of years separating the date of complaint from the judgment entered after retrial. During this time period, property values appreciated, interest rates reached record highs and the Legislature enacted a new body of law to govern eminent domain proceedings.

When the County began proceedings on February 16, 1973, eminent domain law in California was controlled by former title 7 of part 3 of the Code of Civil Procedure,[2] consisting of sections 1237 to 1267. This entire law was repealed and reenacted in 1975 (Stats. 1975, ch. 1275, §§ 1, 2, p. 3409, operative July 1, 1976) with the revised statute, entitled "Eminent Domain Law," included in new title 7 of part 3. (§ 1230.010 et seq.)

The new law became operative while this case was on appeal following the first trial. However, the former law properly governed appellate review in light of section 1230.065 which provides: "(a) This title becomes operative July 1, 1976.

"(b) *This title does not apply to an eminent domain proceeding commenced prior to January 1, 1976.* Subject to subdivisions (c) and (d), in the case of an eminent domain proceeding which is commenced on or after January 1, 1976, but prior to the operative date, this title upon the operative date applies to the proceeding to the fullest extent practicable with respect to issues to be tried or retried.

"(c) Chapter 3 (commencing with Section 1240.010), Chapter 4 (commencing with Section 1245.010), and Chapter 5 (commencing with Section 1250.010) do not apply to a proceeding commenced prior to the operative date.

"(d) *If, on the operative date, an appeal,* motion to modify or vacate the verdict or judgment, or motion for new trial *is pending, the law applicable*

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise indicated.

*thereto prior to the operative date governs the determination of the appeal or motion.* (Italics added.)

Following reversal, the case was set for retrial. Although originally scheduled for July 1978, several continuances granted at the Morrisons' request delayed the trial date by more than three years. Pending retrial, the Morrisons successfully moved for leave to supplement their answer by adding a request for compensation for loss of business goodwill. The motion was based on the new eminent domain law, section 1263.510 which, unlike the old law, provides for compensation for loss of business goodwill. The County opposed the motion on the basis the new law did not apply to this case, citing section 1230.065.

Although the County attempted to defeat the amendment through several writ and motion proceedings, the case went to trial with the issue of goodwill compensation placed before the jury. Comments made by this court in denying the County's first writ petition and by the trial court at a motion hearing indicated the first court's earlier granting of leave to supplement the answer was in error, but that the error could be corrected only on appeal. In order to prevent the need for a retrial on this issue, the trial court specifically submitted a special verdict regarding goodwill compensation.

At retrial the jury found the fair market value of the property on February 16, 1973, was $875,000 and the compensable loss of business goodwill was $56,250. The judgment in condemnation entered by the court included an award of 7 percent interest per annum running from August 13, 1980, the date the County took possession of the property. The record does not reveal what steps, if any, the Morrisons took either before or after judgment to challenge the award of 7 percent interest.

After trial, the Morrisons moved to recover litigation expenses under the federal and state Constitutions and under former section 1249.3 and present section 1250.410. The court denied the motion, finding the Morrisons did not timely file and serve the County with a final demand as required as a condition to recovery under the code.

*Discussion*

I

■ Payment for loss of business goodwill resulting from condemnation is not constitutionally required. (*Community Redevelopment Agency* v. *Abrams* (1975) 15 Cal.3d 813, 831-832 [126 Cal.Rptr. 473, 543 P.2d 905, 81 A.L.R.3d 174], cert. den., 429 U.S. 869 [50 L.Ed.2d 149, 97 S.Ct.

180].)[3] The Legislature, in enacting the new eminent domain law (§ 1230.010 et seq.), made such compensation available for the first time. (See § 1263.510.) Because the new law did not become operative until July 1, 1976, compensation for loss of business goodwill was not available to the Morrisons at their first trial.

■■■ The County, pointing to section 1230.065 (see *ante*), contends such compensation also was not available at the second trial. It explains that since the proceeding began on the date the complaint was filed, February 16, 1973, subdivision (b) controls and prohibits application of the new law in stating: "This title does not apply to an eminent domain proceeding commenced prior to January 1, 1976." The Morrisons argue that we cannot rely solely on the statute but must also consider the legislative comments to section 1230.065. If we do so they believe we will conclude their second trial was governed by the new law. Although we accommodate the Morrisons' request to consider the legislative history, we nonetheless hold the statutory language is clear in prohibiting application of the new law to this case.[4]

The language of section 1230.065 is clear and unambiguous on its face. ■■■ The general principle in cases where there is no need for construction is to refrain from indulging in it. (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473]; *Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].) ■■■ While the Morrisons apparently agree the new law is inapplicable to a proceeding started before January 1, 1976, which reaches a *first trial* after that date, they argue a case scheduled for *retrial* after January 1, 1976, following appeal is governed by the new law. They rely on the legislative committee comment to section 1230.065 which discusses subdivision (d) and provides if a posttrial motion or appeal results in a new trial, "this title would govern

---

[3]"The Fifth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, [citation], provides in relevant part: '. . . nor shall private property be taken for public use, without just compensation.' [¶] Article I, section 19 (replacing former art. I, § 14) of the California Constitution provides in relevant part: 'Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner.'" (*Id.*, at p. 816, fn. 2.)

[4]The Morrisons also present an "operative facts" argument, i.e., the new law should apply here because they lost their business when the County took possession in August 1980, four years after the new law's operative date. Neither the statute nor the comments, however, refer to "operative facts" or attach any significance to when such facts occur. The controlling event for application of the new law is the commencement of the eminent domain proceeding (see § 1230.065, subds. (b) and (c)), not the occurrence of any particular operative fact.

the further proceedings in the action under subdivision (b)."[5] Referring back to subdivision (b), however, we are confronted with the first sentence: "This title does not apply to an eminent domain proceeding commenced prior to January 1, 1976."

These two statements appear contradictory and are best explained by the fact that amendments made to section 1230.065 while it was being considered by the Legislature were not fully dealt with by the comments. The new eminent domain law was designed to be retroactive, but during the legislative process an amendment made it nonretroactive. Some of the comments addressing retroactivity were altered to reflect this change, but the comments regarding retrial remained untouched, possibly due to oversight.

Section 1230.065 was introduced on December 2, 1974, as Assembly Bill No. 11 by Assemblyman McAlister. As introduced, the eminent domain law was intended to apply to proceedings already commenced: "(b) Subject to subdivisions (c) and (d), in the case of an eminent domain proceeding commenced prior to the operative date, this title upon the operative date applies to the proceeding to the fullest extent practicable with respect to issues to be tried or retried." (§ 1230.065, subd. (b) of Assem. Bill No. 11 as introduced Dec. 2, 1974.)

Subdivision (d) and the committee comments to that subdivision were the same in 1974 as they are now.[6] In the context of the statute as introduced,

---

[5]The Legislative Committee comment to section 1230.065 provides:

"Subdivision (a) of Section 1230.065 delays the operative date of this title until July 1, 1976, to allow sufficient time for interested persons to become familiar with the new law.

"Subdivision (b) adopts the policy that this title is to apply to the fullest extent practicable to pending proceedings except those commenced more than six months before the operative date. In most proceedings commenced within six months before the operative date, except perhaps those in trial or awaiting imminent trial, the immediate application of this title would not delay the parties or court in proceeding to judgment. Immediate application moreover, would prevent inconsistencies of result as between proceedings commenced shortly prior to the operative date and those commenced shortly thereafter. The phrase 'to the fullest extent practicable' is intended to give the court discretionary power to adapt the application of the title to the circumstances of individual cases, thereby reducing the possibility that immediate application of these provisions to pending litigation might in special cases cause injustice.

"Subdivision (c) excludes from application to pending proceedings provisions dealing with the right to take, precondemnation activities, and pleadings.

"Subdivision (d) provides, in the interest of fairness, that any decision of a posttrial motion or appeal pending on the operative date should be based upon the law that was applicable where [sic] the action was tried. It would be unfair to hold litigants to a different rule of law in the determination of claimed error than the law which governed at the time the claimed error was committed. *If the motion or appeal results in a new trial, however, this title would govern the further proceedings in the action under subdivision (b)."* (Italics added.)

[6]The original committee comment to section 1230.065, subdivision (b) differed from the final comment. The original comment provided in part: "Subdivision (b) adopts the policy that this title is to apply to the fullest extent practicable to pending proceedings. In most proceedings, except perhaps those in trial or awaiting imminent trial, the immediate application of this title would not delay the parties or court in proceeding to judgment. . . ."

the comment correctly and logically explained the new law would govern a new trial after the operative date even if the case had commenced prior to that date. This paralleled treatment of cases coming to *first* trial after the operative date, which also were governed by the new law. (See subd. (b) of Assem. Bill No. 11 as introduced, *ante.*)

On April 10, 1975, Assembly Bill Number 11 was amended to prohibit retroactive application. At the time of this amendment, the comment to subdivision (b) also was amended to reflect the altered intent. (Compare fns. 5 and 6, *ante.*) However, the comment to subdivision (d) was not amended, even though it had been drafted when the statute was to be applied retroactively.

The law we are left with expressly precludes retroactive application and yet, through the comment to subdivision (d), seems to suggest a legislative intent to apply the new eminent domain law to cases on retrial. The best explanation for this contradictory comment is oversight. Explicit steps were taken to amend subdivision (b) to eliminate retroactivity and the comments to subdivision (b) were accordingly modified. Subdivision (d) was not amended, and perhaps it did not occur to the legislators to review the comments relating to that subdivision. If the Legislature had intended the new law to apply to cases at retrial, it would have amended the statute to reflect that intent. Since it did not, we are left with an unambiguous statute and ambiguous legislative history and will therefore rely on the statute to deny application of the new law to the Morrisons. ■ Our conclusion comports with the general rule that resort to legislative history is unnecessary when statutory language is certain and unambiguous. (*People* v. *Flores* (1979) 92 Cal.App.3d 461, 472 [154 Cal.Rptr. 851].) "[W]e are not free to substitute legislative history for the language of the statute." (*Aronsen* v. *Crown Zellerbach* (9th Cir. 1981) 662 F.2d 584, 588, fn. 7, cert. den., 459 U.S. 1200 [75 L.Ed.2d 431, 103 S.Ct. 1183].)

This result is unfair to the extent the Morrisons are denied compensation for a loss for which others will receive compensation. ■ However, it is within the Legislature's power in the field of economic regulation to select a date certain from which new benefits will be bestowed. Such a chronological classification provides for orderly transition and bears a rational relationship to an appropriate governmental objective. (*Carson Redevelopment Agency* v. *Wolf* (1979) 99 Cal.App.3d 239, 243-245 [160 Cal.Rptr. 213].)

II-IV*

. . . . . . . . . . . . . . . . . . . . . . .

*See footnote 1, *ante,* page 233.

## Disposition

The judgment is modified by striking the award of $56,250 as compensation for loss of business goodwill plus interest awarded on that sum. As modified, the judgment is affirmed except as to the award of 7 percent interest on the $356,000 unpaid value of the Morrisons' property. That award is reversed and the case is remanded for further proceedings to determine the applicable market rate of interest.

Work, J., and Butler, J., concurred.

On April 17, 1984, the opinion was modified to read as printed above. The petition of defendants and appellants for a hearing by the Supreme Court was denied June 21, 1984.