[Civ. No. 36941. First Dist., Div. Four. Dec. 29, 1975.]

CITY OF MOUNTAIN VIEW, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA
COUNTY, Respondent;
THOMAS BARNES, Real Party in Interest.

## Counsel

Bruce Liedstrand, City Attorney, and Ronald J. Cote, Assistant City Attorney, for Petitioner.

No appearance for Respondent.

Michael Atherton for Real Party in Interest.

## Opinion

**RATTIGAN, J.**—This proceeding involves the problem of an apparent overlap between the eminent domain law and the relocation assistance law.[1] A person sued by a public entity in a condemnation action, brought

[1] The two short titles thus employed are our own. The term "eminent domain law" refers to title 7 (captioned "Of Eminent Domain") of part 3 of the Code of Civil Procedure, commencing with section 1237. The term "relocation assistance law" refers to chapter 16 (entitled "Relocation Assistance") of division 7 of title 1 of the Government Code, commencing with section 7260.

It bears mentioning that the entire eminent domain law has been repealed and reenacted this year (Stats. 1975, ch. 1275, §§ 1 and 2, p. — et seq.) but that the new enactment will not take effect until July 1, 1976. (Code Civ. Proc., § 1230.065, as added in § 2, *id.*) Accordingly, and except where otherwise expressly indicated, the term "eminent domain law" refers to the *present* title 7 of part 3 of the Code of Civil Procedure.

It should also be mentioned that the eminent domain law has been enacted in implementation of former section 14 of article I of the California Constitution. Former section 14 was repealed, re-adopted in new language, and renumbered as section 19 of article I, at the general election held on November 5, 1974. Although its pertinent language applies to the events involved in this proceeding (because they occurred prior to the 1974 election), it was re-adopted without substantive change. The pertinent language provided, as section 19 of article I now provides in substance, that "[p]rivate property shall not be taken *for public use* without *just compensation* having first been made to, or paid into court for, the owner." (Italics added.) (Cal. Const., art. I, § 14, as last amended Nov. 6, 1934; compare *id.,* art. I, § 19, as added Nov. 5, 1974.)

under the eminent domain law for the acquisition of his real property for a public use, may plead and recover the "just compensation" to which he is entitled for the loss of the property. (Cal. Const., former § 14 and present § 19 [see fn. 1, *ante*]; Code Civ. Proc., §§ 1246, 1264.7.) If the acquisition has physically "displaced" him from the property, the relocation assistance law may entitle him to receive certain specified benefits from the condemning public entity. These benefits may include payment of his actual moving expenses or related losses caused by the acquisition of the property, or a "fixed relocation payment" in lieu of such moving expenses or losses.[2] The question presented here is whether he may seek to recover a "fixed relocation payment" in the public entity's condemnation action itself, as part of—or in addition to—the "just compensation" which he is entitled to recover therein under the eminent domain law.

---

[2]The relevant sections of the relocation assistance law are Government Code sections 7260 and 7262, which respectively provide in pertinent part as follows (italics added):

"7260. As used in this chapter [i.e., in the relocation assistance law]: [¶] (a) 'Public entity' includes . . . a . . . city . . . . [¶] (b) 'Person' means any individual, partnership, corporation, or association. [¶] (c) 'Displaced person' means any person who moves from real property, or who moves his personal property from real property, as a result of the *acquisition of such real property,* in whole or in part, *by a public entity . . . for public use.* . . . [¶] (g) 'Public use' means a use for which real property may be acquired by eminent domain. . . ."

"7262. (a) As part of the cost of acquisition of real property for a public use, a public entity *shall compensate* a displaced person for his:

"(1) Actual *and reasonable* expense in moving himself, family, *business,* or farm operation, including moving personal property.

"(2) Actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, *as determined by the public entity.*

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(c) Any displaced person who moves or discontinues his business or farm operation who elects to accept the payment authorized by this subdivision in lieu of the payment authorized by subdivision (a), shall receive a fixed relocation payment in an amount equal to the average annual net earnings of the business or farm operation, except that such payment shall not be less than two thousand five hundred dollars ($2,500) nor more than ten thousand dollars ($10,000). In the case of a business, no payment shall be made under this subdivision, *unless the public entity is satisfied* that the business cannot be relocated without a substantial loss of patronage and is not a part of a commercial enterprise having at least one other establishment not being acquired, which is engaged in the same or similar business. For purposes of this subdivision, the term 'average annual net earnings' means one-half of any net earnings of the business, or farm operation, before federal, state, and local income taxes, during the two taxable years immediately preceding the taxable year in which such business or farm operation moves from the real property being acquired, or during such other period *as the public entity determines* to be more equitable for establishing such earnings, and includes any compensation paid by the business or farm operation to the owner, his spouse, or his dependents during such two-year or such other period. To be eligible for the payment

The question arises from the following procedural sequence: Petitioner, the City of Mountain View (hereinafter "the City"), commenced an action under the eminent domain law for the acquisition of certain described and enumerated parcels of land for street and related purposes. Thomas Barnes, real party in interest herein, was named among some 60 condemnee defendants in the action, by his true name and under his business name of "Daisy Diaper Service."

Barnes filed an answer in which he alleged (or "admitted"), in paragraph II, that he was a lessee of parcel 18 as described in the City's complaint; in paragraph III, that he owned "certain equipment designed for industrial purposes and installed for use in a fixed location,"[3] which equipment had a fair market value of $35,000; in paragraph IV, that the fair market value of his leasehold interest in parcel 18 was $15,000, and that the City was taking both the equipment and the leasehold interest in its condemnation action; and, in paragraph V, that "as a result of the taking of the property described as parcel 18, he has been compelled to discontinue his business, known as Daisy Diaper Service, and is therefore entitled to in lieu moving expenses in the sum of $10,000.00, which has been neither tendered nor paid. . . ."

The City demurred to the answer upon the ground that paragraph V was uncertain for failure to allege any "basis" for Barnes' "entitlement" to recover "$10,000.00 for 'in lieu moving expenses,'" and moved to strike paragraph V for the same reason. The trial court granted the motion to strike upon the ground that Barnes had not alleged in paragraph V that he had "exhausted his administrative remedies" in connection with the "in lieu moving expenses" mentioned, but ruled in effect that such expenses were recoverable in the City's condemnation

authorized by this subdivision, the business or farm operation shall make available its state income tax records, and its financial statements and accounting records, for audit for confidential use to determine the payment authorized by this subdivision. In the case of an outdoor advertising display, the payment shall be limited to the amount necessary to physically move or replace such display . . . ."

[3]Barnes here invoked a provision of the eminent domain law (Code Civ. Proc., § 1248b), which states: "*Equipment designed for* manufacturing or *industrial purposes and installed for use in a fixed location* shall be deemed a part of the realty for the purposes of condemnation, regardless of the method of installation." (Italics added.) It may be fairly inferred that he asserts a compensable interest in the "equipment," as a lessee of parcel 18, by reason of his arrangement with the lessor. (See Condemnation Practice in Cal. (Cont.Ed.Bar 1973) § 10.5, p. 262.) We hereinafter cite this practice handbook as "CEB" only.

action and granted him leave to amend his answer.[4] Barnes then filed an amended answer in which he reiterated paragraphs II, III and IV of his answer and restated paragraph V as follows:

"V. This answering defendant alleges that as the result of the taking of the property described [in the City's complaint] as Parcel 18, he has been compelled to discontinue his business, known as Daisy Diaper Service. Pursuant thereto, defendant requests [*sic*] plaintiff to pay to him in-lieu moving expenses, pursuant to Government Code, Section 7262(c), but plaintiff has refused, and continues to refuse to pay said benefits. Defendant requested a hearing, which was held on September 16, 1974, to review the decision of plaintiff to deny defendant's request for in-lieu moving expenses. Defendant has exhausted his administrative remedy. Further, as part of the administrative procedure, defendant provided to plaintiff evidence of average annual net earnings, and defendant alleges that his business could not have been relocated without a substantial loss of patronage. Therefore, defendant alleges he is entitled to in-lieu moving expenses in accordance with Government Code Section 7262(c) in an amount to be determined by the Court, but not less than $2,500.00, nor more than $10,000.00."

The City filed a general demurrer to the amended answer upon the ground that it did "not state facts sufficient to constitute a defense" to its action, and moved to strike paragraph V as amended. The trial court overruled the demurrer and denied the motion to strike.

The City thereupon commenced the present proceeding by filing with this court a "Petition For Writ of Prohibition And/Or, In The Alternative, Mandate" which would (1) restrain the trial court "from proceeding further on the relocation benefit issue in the eminent domain action" upon the ground that it lacks jurisdiction to do so, and, or in the alternative, (2) direct the court to set aside its order overruling the City's general demurrer to paragraph V of Barnes' answer, as amended, and denying the motion to strike the paragraph from the pleading.

For purposes of this proceeding, and within the meaning of the relocation assistance law in each instance, it is undisputed that the City is a "public entity" (Gov. Code, § 7260, subd. (a)); that the street and related purposes for which it is acquiring parcel 18 in its condemnation action involve a "public use" for which it may take private property

---

[4]The trial court stated these things in a formal "Order," to which we again refer hereinafter. The court apparently did not rule upon the City's special demurrer.

under the eminent domain law *(id.,* subd. (g); Sts. & Hy. Code, § 4090); that, in paragraph V of his answer as amended, Barnes has pleaded that he is a "displaced person" (Gov. Code, § 7260, subd. (c)); and that he has further pleaded that, as such, he is entitled to recover a "fixed relocation payment" *(id.,* § 7262, subds. (a) and (c)), which he styles "in-lieu moving expenses," because the City's acquisition of parcel 18 has compelled him to discontinue his business. *(Ibid.)*

The question thus presented, as previously stated in the abstract, is whether Barnes may seek to recover the "fixed relocation payment" in the City's condemnation action. ▮ We hold that he may do this, but that he may and must proceed by way of cross-complaint rather than by the allegations of paragraph V of his amended answer alone; we accordingly grant peremptory relief as prayed, but qualify it as appropriate.

The City challenges the trial court's action by arguing that Barnes may not seek to recover the payment, in the City's condemnation action brought under the eminent domain law, because legislative intent to the contrary is indicated by the wholly separate formats in which the respective laws appear; because the benefits afforded by the relocation assistance law are fundamentally different from the "damages" which are recoverable by a defendant condemnee in an action brought under the eminent domain law; and because the judicial remedies available under each law are fundamentally different as well. These contentions are essentially correct, but they do not control here. They nevertheless require discussion, as follows:

### *The Separate Statutory Formats*

Although the eminent domain law has existed in California for more than a century (see Cal. Const. (1849) art. I, § 8; Cal. Const. (1879) art. I, former § 14 and present § 19 [see fn. 1, *ante*]; Code Civ. Proc. (1872) pt. 3, tit. 7 ["Of Eminent Domain"], commencing with § 1237), the relocation assistance law was not enacted until 1969 (Stats. 1969, ch. 1489, § 1, p. 3043) and was then limited to acquisitions of real property for public use in Los Angeles County only. (See Gov. Code, § 7260, subd. (a), as added *ibid.; Parking Authority* v. *Nicovich* (1973) 32 Cal.App.3d 420, 425-427 [108 Cal.Rptr. 137]; *id.,* at pp. 432-433 [dissenting opinion].)

In 1970, the Congress enacted the federal Uniform Relocation Assistance And Real Property Acquisition Policies Act of 1970. (Pub. L.

91-646, tit. I [commencing with § 101]; 42 U.S.C. § 4601 et seq.) This enactment required that the federal government provide relocation advisory and financial assistance to affected persons, and that it follow uniform acquisition policies, whenever it acquired real property under its power of eminent domain. (Comment, *Relocation Assistance in California: Legislative Response to the Federal Program* (1972) 3 Pacific L.J. 114, 115.) By its terms, the federal enactment became binding upon all the states in any instance where, on or after July 1, 1972, a state acquired land under its power of eminent domain in connection with a federal or federally assisted project. (Pub. L. 91-646, § 221, subd. (a); 42 U.S.C. §§ 4630, 4655; Comment, *supra*, 3 Pacific L.J. at p. 115.)

Thereupon, in 1971, the California Legislature amended and augmented the relocation assistance law with the obvious intent to implement the 1970 federal enactment *and* to extend comparable benefits, statewide and payable by the state and its political subdivisions, to persons disaffected by any acquisition of land under the eminent domain law after July 1, 1972. (Stats. 1971, ch. 1574, § 1 et seq., p. 3154. For a history of the 1971 legislation, in combination with a prior enactment in the same year, see Comment, *supra*, 3 Pacific L.J. 114 at pp. 115-116. See also CEB, § 4.53, pp. 76-78.)

Despite its clear purpose in thus developing and enacting the relocation assistance law in its present form, the Legislature did not include in it any provision for judicial relief to a party who is denied relocation benefits claimed under it. Although the law is explicitly and repeatedly addressed to persons disaffected by a public entity's exercise of the power of "eminent domain," the Legislature did not integrate it with the eminent domain law in any way. The respective laws appear in separate codes (see fn. 1, *ante*), and the eminent domain law does not mention relocation benefits: specifically, it has never been amended to permit a condemnee defendant to allege his entitlement to them in answering a complaint in eminent domain, or to prove them at the trial of an eminent domain action. (See Code Civ. Proc., §§ 1246, 1248.)

In an exhaustive study of the eminent domain law which produced its repeal and reenactment this year (see Stats. 1975, ch. 1275, §§ 1 and 2, p.— et seq., as mentioned in fn. 1, *ante*), the California Law Revision Commission expressly pointed out to the Legislature that benefits made available by the relocation assistance law were not a part of the present eminent domain law, and recommended that they not be included, except to provide against overlapping and double recovery, in the new

one. (Cal. Law Revision Com. Rep., Recommendation Proposing The Eminent Domain Law (Dec. 1974) pp. 1653-1654.) In the new law, the Legislature complied with the commission's overall recommendation in this respect and provided the single exception mentioned. (See Stats. 1975, ch. 1275, § 2 [adding Code Civ. Proc., § 1263.010, subd. (b)]. Compare the commission's 1974 recommendation, *supra,* at p. 1820 [recommending enactment of the same section]; see also commission comment, *id.,* at p. 1821.)

### The Difference Between "Just Compensation" and Relocation Benefits

The "just compensation" which a condemnee may recover from the condemnor when his property is acquired for a public use pursuant to the eminent domain law, as contemplated by the Constitution and that law alike, is the "value" (or "actual value," or "fair market value"), measured at a pertinent time (Code Civ. Proc., § 1249) but *of the property being taken only. (Id.,* § 1248, subd. 1; *Sacramento etc. R.R. Co.* v. *Heilbron* (1909) 156 Cal. 408, 409 [104 P. 979]; *Rose* v. *State of California* (1942) 19 Cal.2d 713, 737 [123 P.2d 505]; *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39, 43 [104 Cal.Rptr. 1, 500 P.2d 1345]; *Redevelopment Agency* v. *Del-Camp Investments, Inc.* (1974) 38 Cal.App.3d 836, 843-844 [113 Cal.Rptr. 762]. See Evid. Code, §§ 810-812, 814; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, §§ 586-588, pp. 3882-3886; CEB, § 4.1, p. 41.)

This means that, subject to his proof at the trial of the City's condemnation action against him as such, Barnes may recover "just compensation" representing the value of his "equipment" (see fn. 3 and accompanying text, *ante*) and, subject to his proof and apportionment within the full value of the fee interest in parcel 18, the value of his leasehold interest in the parcel. (See Code Civ. Proc., § 1246.1; 5 Witkin, Summary of Cal. Law, *op. cit. supra,* §§ 595-596, pp. 3892-3895; CEB, §§ 4.54-4.60 [pp. 78-83], 10.3 [pp. 260-261].)

It has been consistently held, however, that actual moving expenses incurred by the owner of an interest in real property, as the result of its acquisition by a public entity under the eminent domain law, are *not* included within the constitutional requirement of "just compensation" which is recoverable under that law. (*Klopping* v. *City of Whittier, supra,* 8 Cal.3d 39 at p. 54 [fn. 7]; *Town of Los Gatos* v. *Sund* (1965) 234 Cal.App.2d 24, 25-28 [44 Cal.Rptr. 181]; *Parking Authority* v. *Nicovich,*

*supra,* 32 Cal.App.3d 420 at pp. 428-430; 3 Cal. Law Revision Com. Rep. (1961) pp. C-9—C-11.) They are "compensable" by the public entity under the relocation assistance law (Gov. Code, § 7262, subds. (a) and (c)), but this result is wholly statutory and independent of the constitutional requirement of "just compensation." (*Klopping* v. *City of Whittier, supra; Parking Authority* v. *Nicovich, supra; id.,* at p. 433 [dissenting opinion].)

The "fixed relocation payment" sought by Barnes is no more than a statutory alternative to the "[a]ctual and reasonable expense in moving" which he might elect to claim under the section of the relocation assistance law which permits him to receive one or the other. (Gov. Code, § 7262, subds. (a) and (c).) The payment is limited in amount (*id.,* § 7262, subd. (c)), while "just compensation" is not.

The relocation assistance law itself provides that "[n]othing contained in this chapter shall be construed as creating *in any condemnation proceedings brought under the power of eminent domain any element of damages not in existence* on the date of enactment of the chapter." (Gov. Code, § 7270 [italics added].) Substantially identical language appears in another section of the law with reference to its amendment in 1971. (*Id.,* § 7272.5.)

### The Difference Between the Judicial Remedies Involved

We have seen that the Legislature has not expressly provided, in either the eminent domain law or the relocation assistance law, a judicial remedy whereby a person entitled to relocation benefits, payable in money under the latter, may recover them if they are subject to dispute. However, the relocation assistance law is pervaded with language which (1) vests a condemning public entity with substantial discretion in making determinations relative to such benefits, (2) in a fact-finding process in which it must engage, fix the amounts of such benefits, and in some instances determine the claimant's eligibility therefor.[5]

---

[5]The entity's discretion appears in various sections of the relocation assistance law which provide that such benefits shall be "reasonable" in amount. (See, e.g., Gov. Code, § 7262, subds. (a)(1), (a)(2) [quoted in fn. 2, *ante*]. See also *id.,* § 7262, subd. (a)(3); § 7263, subds. (b)(1), (b)(3); § 7265, subd. (d) ["reasonably related"]; § 7265.4, ["fair and reasonable"].) With direct reference to the "fixed relocation payment" which may be payable to a "displaced person" whose business is displaced or discontinued as a result of the condemnation of real property (and which payment is claimed by Barnes in paragraph V of his amended answer), the condemning entity's discretion is clear: the relocation assistance law provides that the payment shall not be made "unless the public

In paragraph V of his amended answer (quoted *ante*), Barnes alleges—or fairly imports—that the "fixed relocation payment" he claims was denied him after a "hearing" at which the City's governing body undertook a "review" of his claim pursuant to Government Code section 7266 (see fn. 5, *ante*) and denied it. In light of his allegations concerning this procedure, and the discretion vested in the City's governing body in following it (see *ibid.*), it appears that he has a judicial remedy which he may pursue by petitioning the superior court for relief in administrative mandamus pursuant to Code of Civil Procedure section 1094.5.[6]

A defendant in a condemnation action, who alleges in his answer the amount of "just compensation" to which he is entitled (Code Civ. Proc., §§ 1246, 1248), is essentially in the posture of pursuing an action *at law* because—despite his inverted position as a "defendant"—he is affirmatively seeking money damages which are to be assessed by a jury unless jury trial is waived. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, §§ 64-66, pp. 939-941; Cal. Const., art. I, former § 14 and present § 19 [see fn. 1, *ante*].) In contrast, a petitioner for relief in administrative mandamus is pursuing a remedy which fundamentally lies in equity (2 Witkin, *loc. cit.*; *id.*, vol. 5, Extraordinary Writs, § 213, pp. 3969-3970) and in which, as Code of Civil Procedure section 1094.5 expressly

---

entity is satisfied" that the claimant is eligible, and that its amount shall be keyed to the " 'average annual net earnings' " of the business during a specified period "or during such other period *as the public entity determines* to be more equitable for establishing such earnings." (Gov. Code, § 7262, subd. (c), quoted in fn. 2, *ante* [italics added here].) All of the foregoing provisions indicate the "fact-finding process" mentioned. The process further appears in Government Code section 7266, subdivision (b), which provides in pertinent part: "Any person aggrieved by a determination as to eligibility for, or the amount of, a payment authorized by this chapter [i.e., by the relocation assistance law] may have the application *reviewed by the public entity* . . . ." (Italics added.)

[6]As pertinent, section 1094.5 provides: "(a) Where the writ [of mandate] is issued for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in the inferior tribunal, corporation, board or officer, the case shall be heard by the court sitting without a jury."

Although the relocation assistance law does not expressly provide for "a proceeding in which . . . a hearing is required to be given . . . [and] . . . evidence is required to be taken," such requirements are fairly imported by the "review" process which Government Code section 7266 exacts of a condemning public entity upon the demand of "[a]ny person aggrieved by a determination as to eligibility for, or the amount of, a payment authorized by this chapter [i.e., by the relocation assistance law]." (See fn. 5, *ante*.) We have also seen, from various other sections of the same law, that "discretion in the determination of facts is vested" in the reviewing body. (See *ibid.*) It thus appears that a "person aggrieved" by an adverse result reached in the process may seek judicial review, by way of relief in administrative mandamus, pursuant to Code of Civil Procedure section 1094.5.

provides (see fn. 6, *ante*), he is not entitled to a jury trial. (4 Witkin, *op. cit. supra,* Trial, § 78, p. 2912.)

From the foregoing discussion and distinctions, we draw these conclusions: In an action brought under the eminent domain law for the acquisition of real property for a public use, a condemnee defendant may allege in his answer the amount of the "just compensation" which he claims, and he may undertake to prove that amount at the trial of the action.

*In his answer in that action,* he may not allege the amount of any benefits claimed to be due him under the relocation assistance law, nor may he prove such benefits *at the trial of that action.* If he has been denied claimed relocation benefits, by adverse action of the condemning public entity upon its "review" of his claim by its governing body or other appropriate authority (Gov. Code, § 7266; see fn. 5, *ante*), so that he has exhausted his administrative remedy, his only judicial remedy lies in petitioning the superior court for relief in administrative mandamus pursuant to Code of Civil Procedure section 1094.5.

Because of the fundamental differences between "damages" which he may recover under the eminent domain law and "benefits" to which he may be entitled under the relocation assistance law, and between the two distinct judicial remedies involved, the "trial" of the administrative mandamus proceeding must be conducted separately from the "trial" of the condemnation action.

At the pleading stage of the City's action in the present case, however (at which stage we are now), the sum of these conclusions is that Barnes may not assert his claim to relocation benefits *in his answer* to the City's complaint in eminent domain. They do not mean that he may not *allege* a cause of action for affirmative relief against the City, if he has one, in a cross-complaint filed with—but separate from—his answer in the action. The problem, and its resolution, have virtually been anticipated by Code of Civil Procedure section 428.10, which was enacted in 1971 as part of a major substantive change in the law respecting counterclaims and cross-complaints (Stats. 1971, ch. 244 [p. 372], § 23, at p. 380; see 3 Witkin, Cal. Procedure, *op. cit. supra* (1975 Supp.) Pleading, §§ 1020A-1020B, pp. 125-126), and which was in effect when the City filed the condemnation action involved here.[7]

---

[7]As pertinent, section 428.10 provides: "A party against whom a cause of action has been asserted in a complaint . . . may file a cross-complaint setting forth either or both of

The "Title 7 (commencing with Section 1237) of Part 3" of the Code of Civil Procedure, mentioned in subdivision (a) of section 428.10, is the eminent domain law. (See fn. 1, *ante.*) Subdivision (a) therefore does not authorize the filing of a cross-complaint in an action in eminent domain, but subdivision (b) does if the cause of action "asserted" in the cross-complaint "arises out of the same transaction" as the cause of action stated against the cross-complainant in the condemning entity's complaint. A clear statement of legislative intent to this effect appears in the legislative committee comment which accompanied the enactment of section 428.10.[8]

Barnes' constitutional entitlement to "just compensation" as a con-demnee defendant in the City's action, and his claim to a "fixed relocation payment" under the relocation assistance law, obviously arise from the same "transaction": i.e., from the City's acquisition of parcel 18 pursuant to the eminent domain law. (See 3 Witkin, Cal. Procedure, *op. cit. supra*, Pleading, § 993, pp. 2574-2575.) It therefore appears that he may plead a cause of action relative to the denial of the payment, and that he may do so *in* the City's condemnation action, provided he states it for relief in administrative mandamus pursuant to Code of Civil Procedure section 1094.5 and in a cross-complaint filed pursuant to Code of Civil Procedure section 428.10, subdivision (b), as distinguished from his answer to the City's complaint in eminent domain.

Since he stated at least a foundation for such cause of action in paragraph V of his amended answer (quoted *ante*), he should have been

---

the following:

"(a) Any cause of action he has against any of the parties who filed the complaint . . . against him. Nothing in this subdivision authorizes the filing of a cross-complaint against the plaintiff in an action commenced under Title 7 (commencing with Section 1237) of Part 3.

"(b) Any cause of action he has against a person alleged to be liable thereon, whether or not such person is already a party to the action, if the cause of action asserted in his cross-complaint (1) *arises out of the same transaction . . . as the cause brought against him* or (2) asserts a claim, right, or interest in the property or controversy which is the subject of the cause brought against him." (Italics added.)

[8]"Legislative Committee Comment—Assembly[:] . . . Section 428.10 restricts cross-complaints in eminent domain actions to those that assert a cause of action arising out of the same transaction or occurrence or that involve the same property or controversy. Subdivision (a) which permits assertion of *unrelated* causes of action is made specifically inapplicable to eminent domain actions; but *subdivision (b), which permits assertion of related causes, is applicable.* [¶] *Any undesirable effects that might result from joinder or causes under Section 428.10 may be avoided by severance of causes or issues for trial under Section 1048 of the Code of Civil Procedure.*" (Italics added.)

granted leave to perfect its statement in a cross-complaint as mentioned. The trial court said as much in the order in which it allowed him to amend his answer in the first instance (see fn. 4 and accompanying text, *ante*), but erred in permitting him to pursue recovery of the disputed payment, in his answer, as if it were provable at the trial of the condemnation action proper. We may correct the situation by granting qualified peremptory relief as follows:

In its action under review, the trial court erroneously overruled the City's general demurrer as to paragraph V of the amended answer because it "does not state facts sufficient to constitute a defense" to the condemnation action as such. (Code Civ. Proc., § 430.20, subd. (a).) The court further erred in denying the City's motion to strike paragraph V from the amended answer because, as we have seen, a condemnee defendant's claim to benefits afforded by the relocation assistance law may not be alleged in his answer in the condemnation action involved.

These errors were not jurisdictional so as to sustain a writ of prohibition (5 Witkin, Cal. Procedure, *op. cit. supra,* Extraordinary Writs, § 39, pp. 3813-3814), but—although they were *pro forma* errors only—they may be regarded as abuses of discretion which will and should support a writ of mandate. (*Ibid.,* § 80, pp. 3857-3858.) A writ of mandate will therefore issue as to both rulings, directing the trial court to vacate them, to sustain the City's general demurrer as to paragraph V of the amended answer, and to grant its motion to strike the paragraph from the pleading.

Consistent with our holding that Barnes may properly attempt to proceed pursuant to Code of Civil Procedure section 1094.5 (relative to the denial of the relocation "payment" he seeks, and by way of administrative mandamus), the writ will direct the trial court to grant him leave to file an appropriate cross-complaint within a reasonable time to be fixed by that court.

If and when it is filed, such cross-complaint will be subject to assessment on its own merits as a pleading. If it stands as such, and if the City responds to it, the "trial" of the issues thus joined must be severed from the trial of the City's condemnation action itself. (Code Civ. Proc., § 1048; *id.,* § 428.10, Legislative Committee comment, quoted in fn. 8, *ante.*)

A peremptory writ of mandate will issue in the terms stated herein. Neither party shall recover costs in this proceeding.

Caldecott, P. J., and Keane, J.,* concurred.

*Assigned by the Chairman of the Judicial Council.