[Civ. No. 46477. Second Dist., Div. One. Aug. 23, 1976.]

CITY OF LOS ANGELES, Plaintiff and Respondent, v.
MAHRIA L. DECKER, Defendant and Appellant.

## COUNSEL

Daniel M. Luevano, Rosalyn M. Chapman, Philip L. Goar, John E. McDermott and Jonathan Lehrer-Graiwer for Defendant and Appellant.

Burt Pines, City Attorney, Milton N. Sherman, Chief Assistant City Attorney, Lawrence M. Nagin and James H. Pearson, Assistant City Attorneys, and Keith W. Douglas, Deputy City Attorney, for Plaintiff and Respondent.

## OPINION

HANSON, J.—Mahria L. Decker appeals an order of the superior court denying her motion to recall and quash a writ of execution obtained by

the City of Los Angeles (hereinafter referred to as the City) to obtain possession of condemned real property.

*The Case*

On October 30, 1973, a judgment in condemnation was entered in proceedings initiated by the City ordering condemnation of a number of parcels of real property in fee simple to the City for airport expansion purposes. The court found that appropriate compensation had been paid to those entitled.

Among the properties so condemned was parcel No. 599, formerly owned by appellant Decker. The court's condemnation order was recorded by the County Clerk of Los Angeles on or about November 30, 1973, and title was thereupon conveyed to the City.

Mahria Decker continued in possession of the premises following conveyance of title to the City. On March 1, 1974, the City served on her by mail a written 90-day notice that her right to possession of the premises would terminate May 31, 1974. Together with this notice the City enclosed a rental agreement covering that 90-day period; neither the notice nor the agreement was ever returned to the Department of Airports as undeliverable. Thus the notice requirements provided for in relocation assistance laws were fulfilled. (Gov. Code, § 7267.3; *815 Mission Corp.* v. *Superior Court* (1971) 22 Cal.App.3d 604 [99 Cal.Rptr. 538]; City of L. A. Relocation Assistance Rules & Regs. § 740.33.) Although a follow-up notice was mailed to Mahria Decker on April 25, 1974, she failed and refused to vacate the property on the appointed date.

On October 1, 1974, the City filed a complaint for unlawful detainer of the subject property in the municipal court naming as defendants Gene D. Decker and Mahria L. Decker (action No. 977,233). Service of summons and complaint was made by publication and when no appearance was made by the defendants, a default judgment was entered on April 2, 1975. On April 4, 1975, a writ of execution was issued in the unlawful detainer action and a notice to vacate was posted on the subject premises on May 7, 1975. Mahria Decker thereafter noticed a motion to set aside her default (Code Civ. Proc., § 473.5) and the municipal court on May 8, 1975, stayed its writ until a determination could be made on the motion. The matter was heard on May 15, 1975, and the municipal court, after considering oral argument and all documents in its file

ordered the judgment of default set aside and permitted the defendants to answer.

Meanwhile, on May 12, 1975, the City by ex parte application and without notice to Mahria Decker or her counsel, obtained from the superior court a writ of execution based on the judgment in the earlier condemnation proceeding and directing the sheriff to place the City in possession of the former Decker property. The City delivered the writ to the sheriff for execution only after the municipal court set aside the Decker default. On June 2, 1975, a new notice to vacate pursuant to this writ was posted on the Decker premises; it required that the property be vacated on June 7, 1975. On June 2, 1975, Mahria Decker was personally served with the writ and a copy of the notice to vacate. On June 6, she submitted to the superior court her motion to recall and quash the writ. The City responded alleging that the application for the writ was made after it determined that immediate possession was essential because an airport construction project was planned.

The superior court stayed execution until June 10, 1975, at which time it denied the Decker motion and issued a temporary stay until June 13, 1975, to permit her to seek further relief from the appellate court. The court of appeal denied her application for writs of mandamus and supersedeas. She petitioned the California Supreme Court for hearing thereafter and that court stayed the writ until June 19, 1975, at which time her petition was denied.

Thereafter on July 11, 1975, the sheriff acting pursuant to the writ placed the City in possession of the subject property. The residential dwelling thereon was removed and parcel No. 599 is presently being utilized as part of an expanded public parking facility for Los Angeles International Airport.

### Issues

Appellant Decker contends (1) that she was denied due process under the procedures authorizing a writ of execution to issue ex parte in condemnation proceedings (Code Civ. Proc., § 1254); (2) that she was deprived by the superior court's action of interests protected by the California Relocation Assistance Laws (hereinafter referred to as the CRAL), (Gov. Code, § 7260 et seq.) and the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (hereinafter referred to as the URA) (42 U.S.C. § 4601 et seq.) and (3) that she

qualified as a "displaced person" entitled to receive relocation assistance prior to moving pursuant to Government Code section 7264.5, subdivision (b) and 42 United States Code section 4626(b).

### Discussion

Appellant Decker concedes that her possession of the dwelling situated on parcel No. 599 was effectively terminated by exercise of the writ of execution by the City. Accordingly, the matter which is the subject of this appeal would ordinarily be considered moot (see *County of Los Angeles* v. *Butcher* (1957) 155 Cal.App.2d 744 [318 P.2d 838]; *Marblehead Land Co.* v. *Los Angeles County* (S.D.Cal. 1921) 276 Fed. 305). It is undisputed that before this appeal was perfected the execution was levied and the judgment and order of condemnation were fully satisfied, and this would render the appeal moot. (*Hild* v. *Justice's Court* (1936) 11 Cal.App.2d 235 [53 P.2d 763, 55 P.2d 198].)

Appellant Decker nonetheless contends that even though the issue may be moot as to her, a particular individual, the case presents an issue of recurring and broad public interest which justifies this court in accepting and resolving the issue. In support of her argument that this court should consider the significant public issues which she has attempted to raise by this appeal, appellant relies upon *Ballard* v. *Anderson* (1971) 4 Cal.3d 873 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]. In that case the California Supreme Court invoked the legal principle that where " 'a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot.' " (*Ballard* v. *Anderson, supra,* p. 876.)

With due regard for the significance of the issues involved we have reviewed the proceedings taken in the superior court and determined that appellant Decker was not by its action deprived of any benefits to which she may have been entitled under state or federal relocation assistance laws. It is appellant Decker's contention that by taking ex parte action the superior court deprived her of a timely opportunity to present facts relating to her qualifications as a "displaced person" (Gov. Code, § 7260) entitled to receive relocation assistance (Gov. Code, § 7261) and, more specifically, her claim of "hardship" which would entitle her to claim payment "in advance" (Gov. Code,

§ 7268) to obtain a "comparable replacement dwelling" (Gov. Code, §§ 7263, 7264.5). We do not reach the merits of these claims.

We conclude that as a "displaced person" appellant Decker was required to institute in a timely manner the administrative remedies provided by statute (Gov. Code, § 7260 et seq.; Code Civ. Proc., § 1094.5; City of L. A. Relocation Assistance Rules & Regs. §§ 740.34, 740.35, 740.73). Having failed either to take the appropriate action to claim benefits or to cooperate with the public agency to enable it to fulfill its obligation to determine the benefits for which she may qualify, appellant Decker is not entitled to obstruct the activities of the public agency by belatedly interposing her claims to oppose execution of the writ of possession. A full panoply of administrative remedies is available to process her claim but there is nothing in the record before this court to suggest that it was utilized fully, or at all.

The right of a public entity to take private property for public use has its roots in the California Constitution, article I, section 19. The right of eminent domain carries with it the correlative right to possession by the condemning agency (*Marblehead Land Co.* v. *Superior Court* (1923) 62 Cal.App. 408 [217 P. 536]; *Peck* v. *Superior Court* (1934) 138 Cal.App. 222 [31 P.2d 1042]; *Housing Authority* v. *Lopez* (1958) 159 Cal.App.2d 661 [324 P.2d 976]). The procedure by which the condemning agency may take possession of the property following commencement of an eminent domain action is outlined in Code of Civil Procedure section 1254. The constitutional validity of the procedures outlined therein are well established (*Pacific Gas & Electric Co.* v. *Superior Court* (1973) 33 Cal.App.3d 321 [109 Cal.Rptr. 10]). These procedures have not been altered either expressly or impliedly by the passage of the CRAL (Gov. Code, § 7260 et seq.), nor have they been superseded by federal legislation such as the URA (42 U.S.C. § 4601 et seq.). There are two prerequisites to the issuance of a writ of execution for immediate occupancy pursuant to section 1254 in a case such as the one presently before this court: (1) a determination that the public entity is entitled to acquire the property and (2) a determination that it has made the required payment into court. The record sustains the conclusion that these conditions were satisfied; the duty to issue the writ is then mandatory upon the court (*Pacific Gas & Electric Co.* v. *Superior Court, supra,* p. 327). In the absence of a legislative enactment altering these

procedures, we are bound to follow the existing law. (See *City of Mountain View* v. *Superior Court* (1975) 54 Cal.App.3d 72, 77-79 [126 Cal.Rptr. 358].)[1]

[1]"Although the eminent domain law has existed in California for more than a century (see Cal. Const. (1849) art. I, § 8; Cal. Const. (1879) art. I, former § 14 and present § 19 . . .; Code Civ. Proc. (1872) pt. 3, tit. 7 ['Of Eminent Domain'], commencing with § 1237), the relocation assistance law was not enacted until 1969 (Stats. 1969, ch. 1489, § 1, p. 3043) and was then limited to acquisitions of real property for public use in Los Angeles County only. (See Gov. Code, § 7260, subd. (a), as added *ibid.*; *Parking Authority* v. *Nicovich* (1973) 32 Cal.App.3d 420, 425-427 [108 Cal.Rptr. 137]; *id.*, at pp. 432-433 [dissenting opinion].)

"In 1970, the Congress enacted the federal Uniform Relocation Assistance And Real Property Acquisition Policies Act of 1970, (Pub.L. 91-646, tit. I [commencing with § 101]; 42 U.S.C. § 4601 et seq.) This enactment required that the federal government provide relocation advisory and financial assistance to affected persons, and that it follow uniform acquisition policies, whenever it acquired real property under its power of eminent domain. (Comment, *Relocation Assistance in California: Legislative Response to the Federal Program* (1972) 3 Pacific L.J. 114, 115.) By its terms, the federal enactment became binding upon all the states in any instance where, on or after July 1, 1972, a state acquired land under its power of eminent domain in connection with a federal or federally assisted project. (Pub. L. 91-646, § 221, subd. (a); 42 U.S.C. §§ 4630, 4655; Comment, *supra,* 3 Pacific L.J. at p. 115.)

"Thereupon, in 1971, the California Legislature amended and augmented the relocation assistance law with the obvious intent to implement the 1970 federal enactment *and* to extend comparable benefits, statewide and payable by the state and its political subdivisions, to persons disaffected by any acquisition of land under the eminent domain law after July 1, 1972. (Stats. 1971, ch. 1574, § 1 et seq., p. 3154. For a history of the 1971 legislation, in combination with a prior enactment in the same year, see Comment, *supra,* 3 Pacific L.J. 114 at pp. 115-116. See also CEB [Condemnation Practice in California (Cont.Ed.Bar 1973)], § 4.53, pp. 76-78.)

"Despite its clear purpose in thus developing and enacting the relocation assistance law in its present form, the Legislature did not include in it any provision for judicial relief to a party who is denied relocation benefits claimed under it. Although the law is explicitly and repeatedly addressed to persons disaffected by a public entity's exercise of the power of 'eminent domain,' the Legislature did not integrate it with the eminent domain law in any way. The respective laws appear in separate codes . . ., and the eminent domain law does not mention relocation benefits: specifically, it has never been amended to permit a condemnee defendant to allege his entitlement to them in answering a complaint in eminent domain, or to prove them at the trial of an eminent domain action. (See Code Civ. Proc., §§ 1246, 1248.)

"In an exhaustive study of the eminent domain law which produced its repeal and reenactment this year (see Stats. 1975, ch. 1275, §§ 1 and 2, p. — et seq., as mentioned in . . .) the California Law Revision Commission expressly pointed out to the Legislature that benefits made available by the relocation assistance law were not a part of the present eminent domain law, and recommended that they not be included, except to provide against overlapping and double recovery, in the new one. (Cal. Law Revision Com. Rep., Recommendation Proposing The Eminent Domain Law (Dec. 1974) pp. 1653-1654.) In the new law, the Legislature complied with the commission's overall recommendation in this respect and provided the single exception mentioned. (See Stats. 1975, ch. 1275, § 2 [adding Code Civ. Proc., § 1263.010, subd. (b)]. Compare the commission's 1974 recommendation, *supra,* at p. 1820 [recommending enactment of the same section]; see also commission comment, *id.*, at p. 1821.)" (*City of Mountain View* v. *Superior Court, supra,* 54 Cal.App.3d 72, 77-79.)

While the City apparently concedes that appellant Decker may be entitled to additional relocation assistance benefits, it is clear that at the time the writ of execution issued there were a number of factual issues which required resolution for the determination of the type and amount thereof. For one thing, it was not conceded that the URA applied to this project, although there was general agreement that the CRAL was applicable.

An additional element was the availability of replacement housing and the amount of money for which appellant Decker might qualify, and these determinations constitute separate elements which require determination by a standard quite different from that controlling eminent domain proceedings. "The 'just compensation' which a condemnee may recover from the condemnor when his property is acquired for a public use pursuant to the eminent domain law, as contemplated by the Constitution and that law alike, is the 'value' (or 'actual value' or 'fair market value'), measured at a pertinent time (Code Civ. Proc., § 1249) but *of the property being taken only* [citations]." (*City of Mountain View* v. *Superior Court, supra,* 54 Cal.App.3d 72, 79 [126 Cal.Rptr. 358].) Section 7270 of the CRAL provides: "Nothing contained in this chapter shall be construed as creating in any condemnation proceedings brought under the power of eminent domain any element of damages not in existence on the date of enactment of this chapter." Other amounts which may be "compensable" by the public entity under the CRAL or the URA result from statutory provisions and are independent of the constitutional requirement of 'just compensation' (see *Parking Authority* v. *Nicovich* (1973) 32 Cal.App.3d 420, 428-430 [108 Cal.Rptr. 137].)

The Legislature has not expressly provided, in either the eminent domain law or the CRAL, a judicial remedy whereby a person entitled to relocation benefits, payable in money, may recover them if they are the subject of dispute. Nonetheless, under the CRAL the condemning entity is vested with substantial discretion in making determinations relative to such benefits and is required to engage in a fact-finding process to determine the claimant's eligibility and the appropriate amount of benefits. Any person aggrieved by such a determination "may have the application reviewed by the public entity." (Gov. Code, § 7266.)

Although the CRAL does not expressly provide for a hearing and the taking of evidence, such requirements are fairly imported by the review process which any aggrieved person may demand (Gov. Code, § 7266,

*supra*). The CRAL vests discretion in the determination of facts in the reviewing body. "It thus appears that a 'person aggrieved' by an adverse result reached in the process may seek judicial review by way of relief in administrative mandamus pursuant to Code of Civil Procedure section 1094.5." (*City of Mountain View* v. *Superior Court, supra,* p. 81, fn. 6.)

Prior to judicial review, appellant Decker as a "displaced person" was entitled to make a claim for benefits, to have the agents of the City determine the type and amount of benefits for which she qualified, to have that determination if not satisfactory to her, reviewed by the Relocation Assistance Program Director and, if still not satisfied, she was entitled to a hearing before the Board of Public Works (City of L. A. Relocation Assistance Rules & Regs. §§ 740.34, 740.35). We are asked to make the inference that these provisions are inadequate in a case in which there is a complete absence of evidence that the party claiming to be aggrieved ever followed them, even after the time she was represented by counsel. It is alleged that "hardship" qualified appellant Decker to receive payment of relocation benefits prior to moving. However, not only does she fail to make a showing of hardship, but from the declaration of the relocation agent it appears she failed to cooperate and obstructed the effects of the City to appraise the property for purposes of calculating her benefits. The undisputed allegations of his declaration disclose that she refused to permit an inspection or to provide information requested for appraisal of her property until May 27, 1975, at which time she first admitted an appraiser. She was at that time informed of the full extent of benefits available to her and received a relocation booklet and claims forms. Her failure to return the City's rental agreement, her default in the litigation, and her obstruction of the City's efforts in numerous respects, constitutes a course of conduct that is self defeating.

Appellant Decker was neither arbitrarily deprived of benefits nor denied due process by execution of the writ of possession (see *Raigoza* v. *Sperl* (1973) 34 Cal.App.3d 560, 568 [110 Cal.Rptr. 296]).

The order of the superior court denying the motion to quash the writ is affirmed.

Lillie, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied September 22, 1976, and appellant's petition for a hearing by the Supreme Court was denied November 18, 1976.