[No. B069651. Second Dist., Div. Five. Dec. 13, 1993.]

UNITED AUTO WORKERS, LOCAL 887, Plaintiff and Respondent, v. DEPARTMENT OF TRANSPORTATION, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Part II of this opinion is not certified for publication. (Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

William M. McMillan, Charles E. Spencer, Jr., Joseph C. Easley, James E. Livesey and Richard B. Williams for Defendant and Appellant.

Fadem & Douglas and A. Marco Turk for Plaintiff and Respondent.

OPINION

ARMSTRONG, J.—

I

RELOCATION ASSISTANCE

*Introduction*

In February of 1986, appellant California Department of Transportation (Caltrans) acquired by condemnation property belonging to respondent United Auto Workers' Local 887 (the UAW), paying $1.275 million. The property was acquired for the Century Freeway, a project which was partially federally funded.[1]

Under both state and federal law, a person displaced by the acquisition of real property for public use is entitled to specified relocation assistance from the displacing public entity, including payment for moving and related costs. (Gov. Code,[2] §§ 7260 et seq., 7262; 42 U.S.C. § 4601.) Guidelines adopted by the Department of Housing and Community Development (HCD) pursuant to California law provide that renovation costs may be payable as relocation assistance benefits, at the discretion of the public entity and

---

[1] Although the fact is not in our record, at oral argument the parties agreed that the project was partially federally funded.

[2] Statutory references are to the Government Code unless otherwise indicated.

subject to specified criteria. (Cal. Code Regs., tit. 25, § 6090, subd. (b)(1).[3]) However, regulations adopted by Caltrans do not include as allowable payments costs for renovation of replacement premises, and under federal law, a displaced business is not entitled to payment for physical changes to the replacement premises. (Tit. 21, § 1407.05; 49 C.F.R. § 24.305(j) (1992).)

The UAW's claim for relocation assistance from Caltrans included a request for payment of the cost of renovating replacement property to make it suitable for the UAW's use. Caltrans denied those benefits.

The UAW appealed Caltrans's denial to Caltrans's Relocation Appeals Board (the Board), which ruled in Caltrans's favor. The Board found that the Government Code provides that federal law governs relocation assistance on federally funded projects, and that federal law provides that renovation costs are not payable as relocation benefits.

Following the Board's action, the UAW filed a petition for writ of mandate under Code of Civil Procedure section 1094.5. The trial court ruled in favor of the UAW and ordered Caltrans to reconsider the UAW's appeal.

The UAW has been paid slightly less than $12,000 in relocation benefits, and has been denied over $200,000 in requested assistance.

Because an understanding of the trial court's actions and the parties' contentions requires an understanding of the federal and state regulatory and statutory scheme governing relocation assistance, we begin with a summary of that law.

### The state statutory scheme

The trial court based its decision on the California Relocation Assistance Act (the California Act), found at section 7260 et seq., and the guidelines and regulations adopted pursuant to that act. Specifically, sections 7267.8 and 7267.5 are critical to the trial court's decision.

Section 7267.8 provides that:

"(a) All public entities must adopt rules and regulations to implement payments and to administer relocation assistance . . . These rules and

---

[3]Sections of the California Code of Regulations will hereafter be cited by title and section only.

regulations shall be in accordance with the rules and regulations[4] adopted by [HCD].

"(b) Notwithstanding subdivision (a), with respect to a federally funded project, a public entity shall make relocation assistance payments . . . . as required under federal law."

Section 7260.5 recites legislative findings and intent, including a finding that the California Act establishes a "uniform policy for the fair and equitable treatment" of displaced persons, and a finding that "The primary purpose of this chapter is to ensure that [displaced] persons shall not suffer disproportionate injuries as a result of programs and projects designed for the benefit of the public as a whole and to minimize the hardship of displacement on these persons." (§ 7260.5, subd. (b).) The section states the legislative intent that "Uniform procedures for the administration of relocation assistance shall, to the maximum extent feasible, assure that . . . persons in essentially similar circumstances are accorded equal treatment under this chapter." (§ 7260.5, subd. (c)(2).)

The trial court also considered title 25, section 6018, an HCD guideline which provides that: "If a public entity undertakes a project with federal financial assistance and consequently must provide relocation assistance and benefits as required by federal law, the provisions of the Act and Guidelines shall not apply; but if an obligation to provide relocation assistance and benefits is not imposed by federal law the provisions of the Act and Guidelines shall apply."

On the payment of renovation expenses, the trial court considered an HCD guideline which provides that a public agency may pay renovation expenses, subject to specified criteria (tit. 25, § 6090, subd. (b)(1)), and a Caltrans regulation which sets forth allowable payments, which do not include costs for renovation of a replacement premises. (Tit. 21, § 1407.05.)

This case is primarily concerned with section 7267.8 and title 25, section 6018. However, as we explain later in this opinion, we find section 7267.8 ambiguous, and therefore must examine it in its context. (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836].) Two other provisions of the California Act are relevant to our interpretation of section 7267.8.

---

[4]Under the Health and Safety Code, HCD is mandated to adopt "guidelines," rather than "rules and regulations" relating to the California Act. (Health & Saf. Code, § 50460.) The reason for the distinction is not apparent, but it is also of no importance. Because the California Code of Regulations refers to HCD guidelines, we adopt that usage here.

Section 7272 provides that if a displaced person is entitled to greater protection under another provision of state law than under the California Act, the public entity shall also comply with that provision.

Section 7272.3 provides that "It is the intent of the Legislature, by this chapter, to establish minimum requirements for relocation assistance payments. . . . This chapter shall not be construed to limit any other authority which a public entity may have to make other relocation assistance payments or to make any relocation assistance payment in an amount which exceeds the maximum amount for such payment authorized by this chapter. Any public entity may, also, make any other relocation assistance payment, or may make any relocation assistance payment in an amount which exceeds the maximum amount for such payment authorized by this chapter, if the making of such payment, or the payment in such amount, is required under federal law to secure federal funds."

### The trial court ruling

The trial court ruled that title 25, section 6018 precludes the award of renovation costs if a project is federally funded, and thus violates sections 7267.8 and 7260.5 and constitutes an unconstitutional denial of equal protection of the law. The court also ruled that title 21, section 1407.05 (the Caltrans regulation) is invalid because it does not permit the exercise of discretion. The court ordered the Board to reconsider the UAW's appeal pursuant to the provisions of title 25, section 6090, subd. (b)(1) (allowing payments in the agency's discretion), and disregarding title 25, section 6018 and title 21, section 1407.05.

### Federal law

Because this case involves the construction of the California Act in the context of a partially federally funded project, and because the legislative history of the California Act, reviewed *post*, is best understood in the context of federal law, we summarize the federal statutory scheme here.

The federal Uniform Relocation Assistance and Real Property Acquisition Policies Act (the Federal Act) is found at 42 United States Code section 4601 et seq. Many of the provisions of the California Act are identical to those of the Federal Act.[5]

The Federal Act mandates payment of specified relocation expenses by federal agencies. It also provides that: ". . . the head of a Federal agency

---

[5]Generally, the federal statutes predate the California statutes.

shall not approve any grant to, or contract or agreement with, a State agency, under which Federal financial assistance will be available to pay all or part of the cost of any program or project[6] which will result in the displacement of any person . . . unless he receives satisfactory assurances from such State agency that—(1) fair and reasonable relocation payments and assistance shall be provided to or for displaced persons, as are required to be provided by a Federal agency under . . . this title." (42 U.S.C § 4630.)

The Federal Act also includes findings that are almost identical to those in section 7260.5. Included is a finding that "The purpose of this subchapter . . . is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of Federal and federally assisted programs . . . ." (42 U.S.C. § 4621(b).)

## Contentions

Caltrans contends that section 7267.8, subdivision (b) provides that only federally allowed relocation assistance can be provided on federally assisted projects and that title 25, section 6018 repeats that rule. If Caltrans is correct, the guidelines and the Government Code are in accord; the Caltrans regulation excluding payment of renovation costs is in accord with the guidelines, at least insofar as it is applied to federally assisted projects; the UAW was correctly denied benefits; and the trial court erred.

The UAW contends that section 7267.8, subdivision (b) provides that federally allowed relocation assistance must at a minimum be provided on federally assisted projects, and that title 25, section 6018 wrongly provides that federal regulations are the exclusive governing provisions on federally assisted projects. If the UAW is correct, title 25, section 6018 is in conflict with the Government Code, the Caltrans regulation excluding payment for renovations is in conflict with the HCD guideline allowing payment, and the trial court must be affirmed.

## Discussion

■ We find first that both the parties and the trial court misread title 25, section 6018. The guideline does not provide that federal regulations exclusively govern federally assisted projects. It provides that California law does

---

[6]The UAW's emphasis on the fact that its property was acquired for a project which was *partially* federally funded has no legal significance. The Federal Act applies to "federally assisted" projects, including projects where there is a federal grant, loan, or contribution. (42 U.S.C. § 4601(4); *Lake Park Homeowners* v. *U.S. Department of Housing* (W.D. Okla. 1975) 443 F.Supp. 1, 9.)

not apply where the public entity "must provide relocation assistance . . . as required by federal law" and that "if an obligation to provide relocation assistance . . . is not imposed by federal law" California law does apply. The guideline thus provides that where, as here, federal law imposes no obligation to pay a category of benefits, California law allowing payment will apply.

The question remains, however, whether the regulation is in conflict with the Government Code: Does section 7267.8 provide that federally mandated payments are a minimum which must be paid, or the maximum which may be paid? Since we find the statute on its face ambiguous, we turn to the legislative history. "Where a statute is theoretically capable of more than one construction we choose that which most comports with the intent of the Legislature." (*California Mfrs. Assn.* v. *Public Utilities Com., supra,* 24 Cal.3d 836, 844].)

### *The legislative history*

The California Relocation Assistance Act was added to the law by Statutes 1969, chapter 1489, page 3043 (Assembly Bill No. 1191 (Lanterman)). The Legislative Analyst noted that existing law authorized certain agencies to pay specified amounts for expenses incurred as the result of displacement by eminent domain. Assembly Bill No. 1191 extended that authorization to any public entity within Los Angeles County, except the Department of Public Works, and increased the specified amounts. The State Board of Control and each public entity acquiring property were charged with promulgating rules and regulations.

In 1971, the California Act was substantially amended by Statutes 1971, chapter 1574, page 3153 (Assembly Bill No. 533 (Braithwaite)). The bill was a response to the new Federal Act, which, as we have seen, requires states to provide the relocation assistance required of federal agencies, on federally assisted projects. (42 U.S.C. § 4630.) The Legislative Analyst reported that Assembly Bill No. 533 made relocation assistance mandatory; broadened the scope to include all counties, the Department of Public Works, and other agencies; and established increased payments corresponding with those in the Federal Act. The analyst noted "In effect, this bill proposes to provide a uniform relocation assistance law for all 'public entities' and to make uniform payments to displaced owners . . . ."

The "obvious intent [was] to implement the 1970 federal enactment *and* to extend comparable benefits, statewide and payable by the state . . . to persons disaffected by any acquisition of land under the eminent domain law . . . (Comment, *Relocation Assistance in California: Legislative Response to*

*the Federal Program* (1972) 3 Pacific L.J. 114, 115).” (*City of Mountain View* v. *Superior Court* (1975) 54 Cal.App.3d 72, 78 [126 Cal.Rptr. 358].) The bill file includes an analysis of the Federal Act and model legislation pursuant to that act.

In addition, Assembly Bill No. 533 added to the law section 7272, discussed *supra*, requiring public entities to make additional payments allowed under other state law, and section 7272.3, quoted *infra*, declaring the legislative intent to set minimum requirements and allowing public entities to make additional relocation payments required by federal law. (Stats. 1971, ch. 1574, §§ 20, 20.5, p. 3162.)

The author’s letter to the Governor urging that the bill be signed notes that the bill would bring California into the compliance required by federal law, eliminate inconsistencies in payments between federal, state, and local programs, and provide for “uniform and equitable treatment of all our citizens displaced from their homes, businesses or farms through the exercise of the eminent domain power of the state.”

The California Act was amended again in 1972, by Assembly Bill No. 1040 (Braithwaite), chaptered as Statutes 1972, chapter 1307, p. 2607. Section 7268 was amended to require HCD to adopt guidelines for the implementation of the act, and to provide that those guidelines should to the fullest extent possible conform to guidelines promulgated pursuant to the Federal Act.[7] Section 7267.8, subdivision (a) was amended to require, as it does today, all public entities to adopt rules and regulations to implement the act, consistent with guidelines developed by HCD. Section 7267.8, subdivision (b) was amended so that, with the exception of a minor technical change, it reads as it does today.

An analysis by the Assembly Committee on Urban Development and Housing explained that Assembly Bill No. 533 of the previous session conformed California law to the Federal Act, but that “Under present law, rules and regulations may differ considerably because of the multitude of public entities interpreting the law differently and drafting their own regulations.” Assembly Bill No. 1040 “provides authority for all public entities in California to follow federal guidelines in drafting rules and regulations for relocation assistance . . . in federally-assisted projects . . .” and “requires that all payments to displacees of unassisted projects be the same as to displacees under federally assisted projects . . . .”

The author’s letter to the Governor urging that the bill be signed states that “The main objective of the bill is to guarantee uniform applications of relocation assistance law in California.”

---

[7]In 1980, section 7268 was repealed, removing from the law the requirement that California regulations conform as far as possible to the federal guidelines. (Stats. 1980, ch. 1182, § 2, p. 3959.)

The California Act was subject to further amendment in 1989, by Assembly Bill No. 324 (Hughes), chaptered as Statutes 1989, chapter 828. The Federal Act had been amended in 1987, and compliance with those amendments by any state agency seeking federal assistance was mandatory. (42 U.S.C. § 4630; 6A Nichols, The Law of Eminent Domain (rev. 3d ed. 1993) § 34.06, p. 34-14.) The Legislative Counsel's Digest to Assembly Bill No. 324 explains that under existing law: "Acquisitions funded by federal funds are required to meet the requirements of federal law governing relocation assistance. This bill would generally revise the state provisions governing relocation assistance to conform with the federal law by expanding benefits . . . ." Other legislative reports are in accord.

Once again, relocation payments were increased by the amendments. Section 7260.5, declaring legislative findings and intent, quoted *post*, was added to the code.

Thus, throughout the history of the California Act the legislative intent has been *to provide uniform assistance to displaced persons, to equalize payments under California and federal law, and to comply with federal law.* After section 7267.8, subdivision (b) was enacted, the Legislature interpreted the law as requiring California to "meet" federal requirements.

It is apparent that section 7267.8, subdivision (b) was drafted with the expectation that federal law would provide greater benefits than did California, the opposite of the situation today. However, nothing in the legislative history supports an interpretation of the law which establishes federal payments as a maximum.

Moreover, sections 7272 and 7272.3 clearly evidence the Legislature's intent that any displaced person receive the maximum payments allowed under the California Act, other state law, or federal law. An interpretation of section 7267.8, subdivision (b) that establishes federal law as a maximum would be inconsistent with the clear language of those statutes. We thus find that both section 7267.8 and title 25, section 6018 provide that, on federally assisted projects, federally allowed payments are the minimum which must be paid.

■ Caltrans, however, argues that federal law provides that federally allowed payments are the maximum which may be paid by the state. The California legislative intent to comply with federal law is if anything even clearer than the intent to treat all displaced persons uniformly. However, neither we nor the federal courts interpret federal law as Caltrans suggests.

The language of 42 United States Code section 4630 requires only an assurance to the head of a federal agency that a displaced person receive

"fair and reasonable relocation payments and assistance . . . as are required to be provided by a Federal agency . . ." and does not provide that no further payments can be made. Moreover, the Federal Act also provides that "Notwithstanding sections 4630 . . . , the head of a Federal agency may discharge any of his responsibilities under this chapter by accepting a certification by a State agency that it will carry out such responsibility, if the head of the lead agency determines that such responsibility will be carried out in accordance with State laws which will accomplish the purpose and effect of this chapter." (42 U.S.C. § 4604(a).)

As we have seen, the purpose of the chapter is declared to be fairness to displaced persons. (42 U.S.C. § 4621(b).) The payment of additional amounts, available to persons displaced by nonfederally assisted projects, would thus not violate that purpose. Payment of the greater California benefits assures compliance with the minimums of federal law.

Caltrans cites no authority for their interpretation of the Federal Act. The UAW cites *City of Columbia* v. *Baurichter* (Mo. 1986) 713 S.W.2d 263. There, the Supreme Court of Missouri considered the application of state condemnation laws and the uniform real property acquisition policy sub-chapter of the Federal Act. (42 U.S.C. §§ 4651 and 4655.) That court held that "When federal funds are involved, the condemnor must satisfy the requirements of both state law and the [Federal Act], except to the extent state law prohibits compliance with the [Federal Act]." (713 S.W.2d at pp. 265-266.)

More to the point is *Robzen's, Inc.* v. *U.S. Dept. of Housing* (M.D.Pa. 1981) 515 F.Supp. 228. That case considered Department of Housing and Urban Development's (HUD's) obligation to pay certain relocation expenses, including the cost of physical changes to a replacement property, allowed under then-existing HUD regulations. (HUD's refusal to pay was based on an argument concerning the condemnation, not relevant here.) The court reviewed the analytical framework, including the Federal Act, and noted that the Federal Act "supplements state procedures by setting a minimum standard of recovery available to all eligible displacees. If the eminent domain laws of a particular state do not provide sufficient payments to satisfy this standard, then the [Federal Act] authorizes federal funds to make up the difference." (*Id.* at p. 233.)

Caltrans also cites in support of its position Streets and Highways Code section 820, in which the state assents to the provisions of the federal Highways Act. The section also provides that "All work done under the

provisions of [the federal Highways Act] or other acts of Congress relative to highways shall be performed as required under acts of Congress and the rules and regulations promulgated thereunder. Laws, or rules and regulations, of this state inconsistent with the laws, or rules and regulations, of the United States, shall not apply to such work to the extent of the inconsistency." For the reasons described herein, we find the payment of additional benefits under California law not inconsistent with federal law.

Thus, we affirm the result reached by the trial court. However, for the reasons given above, we reject the court's finding that title 25, section 6018 is unconstitutional or in conflict with the Government Code. We agree that title 21, section 1407.05, the Caltrans regulation excluding payment for renovation costs, is invalid, since it conflicts with the HCD guideline (tit. 25, § 6090, subd. (b)(1)) requiring a displacing agency to exercise discretion with regard to those costs. The Government Code provides that agency regulations must be in accord with the guidelines, and the Caltrans regulation may not stand.

## II.

### FEES AND COSTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### Disposition

The order that Caltrans consider the UAW's request for benefits under title 25, section 6090 is affirmed. The award of fees and costs is reversed. Each party to bear its own costs on appeal.

Grignon, Acting P. J., and Godoy Perez, J., concurred.

A petition for a rehearing was denied January 4, 1994, and respondent's petition for review by the Supreme Court was denied March 17, 1994. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1462.